JOHNSON, Judge.
Plaintiff, a sixty-three year old farmer, lives on the river road in St. Charles Parish on the east hank of the Mississippi River. His petition alleges that on November 7, 1958, at about the hour of 5:15 to 5 :20 p. m., he was driving his farm tractor in a southerly direction on the river road when defendant, Joseph S. Becnel, Sr., driving his Chevrolet automobile in the same direction negligently caused his automobile to collide with the left rear of the tractor, resulting in serious and permanent personal injuries to plaintiff and damage to the tractor. The Audubon Insurance Company is joined as a defendant with Becnel on the allegation that it issued its automobile public liability insurance covering Becnel’s automobile by a policy with limits of $10,000.00 for personal injuries, $5,000.00 property damage and $500.-00 for medical expenses.
The defendants admitted the accident and the insurance coverage but denied any liability in the premises. In the alternative defendants alleged that the plaintiff was guilty of contributory negligence by driving his tractor, without lights on the road more than one-half hour after sunset and after darkness had set in.
On the trial of the case in the District Court, the trial Judge gave written findings of fact as being “established with legal certainty,” part of which consisted of the finding that “it was after sunset and before complete darkness when the accident occurred. Plaintiff had no front or rear lights burning on the tractor. Defendant had front and rear lights burning on the automobile. * * * ” The Court said that plaintiff was in violation of LSA-R.S. 32:290 and 293 and that it was the Court’s opinion that the absence of lights on plaintiff’s vehicle constituted negligence which was a proximate cause of the accident. The Court further found that: “The evidence affords this Court reason to find that defendant did not exercise the care imposed on a motorist when his vision is obscured by darkness, fog, dust, smoke, rain or lights from approaching cars: This rule is so well-settled as to forego authorities. Hence, defendant was negligent and his negligence contributed to the cause of the accident.” The Court dismissed the suit with costs to be borne equally by plaintiff and defendant.
After a careful review of the record and pertinent authorities, it is our conclusion that the trial Court’s finding that the plaintiff’s tractor was of skeletal construction that made it difficult to be seen and the Court’s holding that the plaintiff was guilty of negligence which was the proximate cause of the accident are manifestly erroneous, and that the Court’s holding that defendant, Becnel, was guilty of negligence which contributed to the accident is correct.
It is admitted that the plaintiff was driving his tractor without any lights front or back. Plaintiff had been using his tractor in his field a short distance up the road from his home. He left the field and was proceeding along the road at about ten to fifteen miles per hour within two or three hundred feet of his home when Bec-nel’s car, going in the same direction as the tractor, struck the rear of the tractor, resulting in the damages complained about in this suit. The impact caused the tractor to cut to the right into the ditch. *557 Plaintiff was unseated and fell on the fender with his leg tangled in the machinery.
LSA-R.S. 32:290 provides that every vehicle operated on the public highway between one-half hour after sunset and one-half hour before sunrise, or at any other time when a person is not clearly visible two hundred feet ahead, shall be equipped with lighted front and rear lamps as required for different classes of vehicles.
LSA-R.S. 32:292 says that the rear lamp shall be a red light plainly visible a distance of five hundred feet to the rear.
The only question in serious controversy in this case is the time at which the accident happened and particularly as to whether it was daylight or dark. It was stipulated that the sun set on that day at 5:09 p. m. Neither plaintiff nor defendant knows the exact time by the clock at which the accident happened. The defendant admits that it was not completely dark but contends that it was after sunset. The plaintiff and several other witnesses testified that when the accident happened it was still daylight and not dark. The plaintiff testified that when he drove the tractor out of his field the sun had just gone over the levee; that his son followed him out of the field in the truck and that the truck lights were not on up to the time the plaintiff started down the road from the Post Office. The son stopped at the Post Office. The evidence shows that the Post Office was between one thousand and two thousand feet to Gra-nier’s residence and that it was about fifteen hundred feet from Granier’s residence to the point where the accident happened. This would place the Post Office slightly over one-half mile above the •scene of the accident. When plaintiff reached a point about two hundred feet from his own driveway, and just before he was intending to pull to the right shoulder to stop, preparatory to turning into his home, he looked back and saw two vehicles coming up behind him. One of them passed and pretty soon the other hit the tractor.
The vehicle which passed him at that point was driven by C. A. Landeche. Mr. Landeche said that he came up behind the tractor and followed plaintiff for a short distance to give plaintiff protection. Pie knew the plaintiff and knew that plaintiff was right near his own driveway and Lan-deche drove around the tractor and continued down the road. This witness said that it was not dark; that it was that time of day when lights would not help one to see and that a driver could have lights or could drive without them. He did not remember whether he had his headlights or parking lights on at the time.
In view of the time element referred to by other witnesses, it is appropriate to interject right here that in a matter of seconds after the accident Granier, Babin and Roussel came to the scene and they assisted defendant in taking plaintiff off the tractor to the ground. Defendant, Becnel, estimated that about ten minutes elapsed after the collision before they got plaintiff to the ground.
C. H. Everett lived four houses from plaintiff’s home. Everett was a chemist at Ochsner Foundation Laboratory, which he said was eighteen miles downriver from the scene of the accident. Everett testified that he left the hospital at five minutes to five on that day and when he arrived at the scene it was about 5 :30; that plaintiff was already on the ground with a blanket over him; that it was not dark; that when he went around the curve into the straight road about one-half mile below where the accident happened he could see people walking around and that he put his parking lights on about a quarter of a mile before he got to the scene.
Granier, Babin and Roussel were standing in front of Granier’s home, about fifteen hundred feet up the road, when the accident happened. They each testified that they saw plaintiff pass in his tractor; that *558 when Becnel passed, not far behind, he was travelling about forty to fifty miles per hour; that almost immediately after Becnel passed they heard the crash and they could see from that distance that the car had knocked the tractor into the ditch and could see the plaintiff lying on the tractor. They jumped in a car and went down there immediately and assisted in getting plaintiff off the tractor. They testified that just before they heard .the crash plaintiff’.s son passed Granier’s home and waved at them; that when they heard the crash and looked down that way they saw plaintiff’s son pulling up to the scene of the wreck and driving the truck he was in to the side of the road; that it was not dark and the street lights along the road had not been put on at that time. Anthony Vitrano left his home, two and one-half miles downriver at S :30, he drove up the road toward Norco where he was due to meet others at ten minutes to six. When he arrived at the scene of the accident, he saw the tractor in the ditch and the plaintiff on the ground. There were a good many cars there and he drove past, parked and walked back and spoke to the plaintiff, who was on the ground. The police officer was already there directing traffic and Vitrano said it was not dark but between sunset and dark and Vitrano said he stayed there about ten minutes and then drove to Norco. When he walked into the bowling alley where he was to meet his friends he looked at the clock and it was eight minutes to six.
Mr. Becnel said that he left his place of work at Gramercy at 4:30; that he stopped at the bank and a ■ drugstore on the way downriver; that about five hundred feet before the scene of the accident he passed a truck, at which time he saw bright lights coming toward him about one thousand feet down the road. He said at first that the lights blinded him then, but later explained that he was not blinded by the lights only just an instant before his car struck the tractor; that after he passed the truck mentioned above, he continued at about the speed of thirty miles per hour; that he was not looking ahead to see what was in the road ahead of him but kept his eyes down looking at the white line in the center of the road; that it was not dark; but between sunset and dark and he had his lights on dim; that he always turns his lights on well in advance of darkness and before he needs them; that he did not see the tractor until his car was about six feet from it, when, looking at the white line right in front of his car he saw a wheel turn on the pavement; that when his car hit the tractor the oncoming car was about one hundred feet away. He thinks the accident happened about a quarter or twenty minutes to six. His is the only testimony that puts the accident later than S :30.
Defendants have made a special defense that plaintiff was guilty of contributory negligence. It is the law in this state that in cases of this kind the burden of proving the special defense of contributory negligence on the part of plaintiff is imposed on the defendant. Althans v. Toye Bros. Yellow Cab Co., La.App., 191 So. 717; McClenaghan v. United States Fidelity & Guaranty Co., La.App., 79 So.2d 373; Service Fire Ins. Co. of N. Y. v. Indiana Lumbermans Mutual Ins. Co., La.App., 111 So.2d 358; Delta Fire & Casualty Company v. Bird, La.App., 121 So.2d 375.
There was no violation on the part of plaintiff of the technical provisions of the statutory traffic regulations referred to hereinabove, unless the time of the accident was after 5:39 p. m., on that day. There is not a single witness, save Becnel, who testified that the collision took place after that time. Defendant, Becnel, himself gave estimates ranging from 5:15 to 5:45 p. m., but he frankly admits that he did not look at his watch and did not know what time it was when the accident happened. The law is plain and definite and should be strictly enforced. Because of this and because of the very purposes of the rule, the evidence to convict must be *559 positive and convincing. We conclude that plaintiff was not guilty of any negligence.
 At one time in this state a following motorist who drove his automobile into the rear of another vehicle travelling ahead in the same direction created the presumption of negligence against the motorist. If the driver of the leading vehicle was plaintiff in a case with the corresponding burden to prove his case, in such a situation the burden of proof shifted and the defendant was required to exculpate himself from negligence by preponderance of evidence. That shifting is no longer true. With the great increase in the number of vehicles travelling our highways, the Courts are now compelled to recognize and consider many situations and exceptions to the expected normal mode of travel, so that the facts in each case must be analyzed with great care and particularly with respect to the weight of evidence and the corresponding duties of the parties in order to arrive at a just and clear determination of blame. In recent years the drivers of motor vehicles who can give sensible and reasonable explanations of what caused them to crash into the rear of another car ahead, the Courts are ready to excuse them; providing, their own lack of caution did not cause the dilemma with which they were faced, and, provided further, that they made every possible effort to avoid the accident. With that in mind, the question immediately arises what is defendant’s explanation? The comments above includes his answer. The answer does not permit this defendant to escape liability. Some cases have held that a driver is not required to see unusual objects when the failure to see is brought about by circumstances over which he has no control, but we know of no decision that excuses the driver who does not look at the road ahead and who makes no effort himself to keep out of trouble. Bec-nel’s own testimony convicts him of being guilty of the grossest negligence. He said he was not blinded by the oncoming lights when he saw them a thousand feet ahead. ■Instead of keeping a sharp lookout ahead he took his eyes off the road and did not look ahead again. He travelled in this fashion some five hundred feet. If other people could see the tractor from a distance of fifteen hundred feet and see the plaintiff on it there is no reason why defendant could not have seen this tractor at any time after he passed the truck five hundred feet before the collision. Defendant’s counsel argued and the lower Court held that the tractor is an unusual vehicle of skeletal construction. There is no evidence to support that conclusion. Some tractors are small. Some are large. Some have big wheels and big fenders extending to a body constituting an object as dense and large and as wide as some trucks. The proximate cause of that accident and the cause of the resulting damages was defendant Becnel’s negligence and his failure to keep a proper observation of the whole road ahead of him.
The trial Court cited a number of cases on which it relied to dismiss the suit. We have examined all of them. Some of those cases seem to support the decree of the trial Court, but a careful analysis reveals distinguishing facts in all of them. One noticeable expression in all those cases, where the Courts had excused the following driver from liability for colliding with the rear end of another vehicle, was that such driver had kept a proper lookout and had exercised due care and caution. That cannot be said of Becnel.
The plaintiff was a rather large man and at the trial of the case in March 1960, he had not fully recovered from his injuries received in the accident. He testified that he suffered a great deal of pain; that he was only able to walk a few steps alone; that he had tried to operate his tractor a time or two but was unable to do so successfully. Dr. M. K. Gaupp evidently lived close to the scene of the accident, and he was called and arrived within a few minutes. Plaintiff was complaining with his lower leg and his back. The doctor could *560 not make a definite diagnosis but he gave him morphine to alleviate the pain and placed a splint with traction on his leg. Dr. Gaupp did not attend him while plaintiff was in the hospital but after his discharge from the hospital on November 24, this doctor saw him two or three times a week, giving him medication and working on his leg to reduce the swelling. He explained about the slow progress of recovery, attributing some of it to the presence of arthritis, weakness of muscles and other natural causes. He stated that some time prior to the accident plaintiff had been operated on for hernia and it required nine months for complete recovery from the operation. This doctor did not follow the case from an orthopedic standpoint. Dr. Lenoir handled the case as an orthopedist.
Dr. Lenoir testified that he saw the patient on the evening of November 7. He found him in considerable pain. That X-rays revealed transverse fractures of the lower third of the fibula and the comminut-ed fracture of the tibia in more than two fragments, though the bone did not go through the skin. This fracture involved the ankle joint. Surgery on the leg was performed and the fracture of the fibula was fixed with a pin in the bone canal with screws in the parts of the tibia to hold them in place. The plaintiff kept complaining of his shoulder but no X-ray was made of that part until later. Because of continued complaining an X-ray was made which disclosed a simple fracture of the proximal humerus. The doctor explained that the plaintiff suffered considerable pain, as is generally the case of leg fractures. He said the plaintiff’s general condition was not good on account of a heart ailment and the presence of arthritis. He placed the left leg in a long leg cast. The first cast remained until January 7, 1959, when it was removed and another applied. On February 11, 1959, he was confined in the hospital for three days. Other X-rays were made on April 9, when the fracture was found in good position. The cast was removed and a long leg brace installed. He was instructed to begin to try to walk with crutches, but this was not successful for a good while later. His limbs were weak and he was unable to support his weight. The long leg brace was removed and a short leg brace applied. Some time later it was necessary to wear an elastic wrapper to reduce the swelling. In the meantime other X-rays were made and on June 9, 1959, they found the fractures had not completely healed. The plaintiff was still wearing a brace on September 9, 1959. On December 8, 1959, it was found that he could walk very little. There was still considerable swelling. On March 8, 1960 his walking had improved with a leg brace and crutches. The fracture appeared to be healed at that time. On June 13, 1960, plaintiff was still wearing the brace, walked with crutches but with difficulty. The doctor estimated that plaintiff had a permanent 40% loss of function of the left ankle, half of which he “guessed” was due to arthritis. He said that this plaintiff was 75% disabled for farming purposes and said that if plaintiff was able to do heavy labor before the accident he surely could not do it now and he would have to attribute his disability to whatever happened to him in the accident.
The very nature of the human body is such that injuries resulting from accidents never create the same results in different people. Therefore, there can be no uniformity of injuries or awards. Counsel for plaintiff does not furnish the Court any guide in the form of awards in other cases, but counsel for defendant suggests that the case of Plaisance v. Pellerin, La. App., 102 So.2d 499, involves similar serious injuries, in which case the Court awarded $6,000.00 for injuries and loss of wages, plus $1,049.85 for medical expenses to the day of trial. Comparing the injuries received by the plaintiff in that case, to those suffered by plaintiff in the case at bar, it is our belief that plaintiff here incurred a great deal more serious injuries and disabilities and over a much longer period of *561 time. We say that merely as a brief explanation of why we have concluded to fix the award in this case for personal injuries at the sum of $7,500.00. In addition to that sum the plaintiff should recover the following medical expenses: Doctors’ bills, for Dr. Gaupp $146.00, for Dr. Lenoir $397.00, for Drs. Cain, Campbell and Faust $40.00; Southern Baptist Hospital $539.35; ambulance service $80.00; surgical brace $84.-90; Webber Appliance $61.80; nurses $434.00; or a total of $1,783.05. The amounts of the above items were agreed to by stipulation. Counsel for plaintiff offered an estimate of Craine Equipment Company for damages to the tractor of $197.00. There is no evidence of the correctness of this estimate and it cannot be allowed. Scott v. Davis, La.App., 56 So. 2d 187. The evidence on the loss of crops and earnings is too indefinite and speculative to be considered. There should be taxed as part of the cost expert witness fees for Dr. Gaupp and Dr. Lenoir of $100.00 each.
While the trial Court did not pass upon the amount of damages suffered by plaintiff, this Court has the right originally to determine these amounts by Article 2164 of the LSA Code of Civil Procedure and Brocato v. Sun Underwriters Ins. Co. of New York, 219 La. 495, 53 So.2d 246, 29 A.L.R.2d 629, and Banks v. Kent Piling Company, La.App., 110 So.2d 804.
For these reasons, the judgment of the district Court appealed from dismissing plaintiff’s suit is reversed.
It is now ordered, adjudged and decreed that the plaintiff recover of the defendants individually and in solido, the sum of $7,-500.00 for personal injuries, and $1,783.05 for medical expenses, together with legal interest on both amounts from date of judicial demand until paid. Expert witness fees for Dr. Gaupp and Dr. Lenoir of $100.00 to each shall be taxed as costs. The defendants to pay all costs in both Courts.
Reversed and rendered.