LANDRY, Judge.
This is an action for damages for personal injuries sustained by Mrs. Bertha Freeman Hester in an automobile collision. She is joined by her husband, S. J. Freeman, who seeks recovery for property and other special incidental damages sustained and incurred in the treatment of the wife’s injuries and the repair of the family automobile.
The named defendants are William T. Stewart, driver of a vehicle which struck plaintiff’s vehicle from the rear; Stewart’s insurer, Hanover Insurance Company; Mrs. Margaret Langlois, whose alleged *432 negligence purportedly precipitated the accident but whose vehicle did not come in physical contact with either of the colliding automobiles; and Grain Dealer’s Insurance Company, liability insurer of the Langlois automobile.
After trial below, judgment was rendered in favor of petitioner, S. J. Hester, in the stipulated sum of $1,219.30 and in favor of Mrs. Hester in the aggregate of $7,000.00 against all defendants, in solido. Defendants have appealed praying for reversal of the judgment in favor of plaintiffs and alternatively, reduction of the award in favor of Mrs. Hester. Defendant’s appeals have been answered by Mrs. Hester who seeks an increase in the award allotted her by the trial court.
In their broadest scope the questions presented for resolution fall within the general categories of liability and quantum. More particularly, the issue of liability raises the questio'n of proximate cause or causes of the accident and the alternative defense of contributory negligence on the part of Mrs. Hester. The record presents virtually nó dispute as to the facts giving rise to this litigation. Therefore, the alleged liability of defendants presents legal issues whereas the question of quantum is basically factual.
The accident in question occurred at approximately 5 :15 P.M., April 22, 1961, in the City of Baton Rouge, at the intersection of Wyandotte and Hiawatha Streets, both of which are two lane thoroughfares. Wyandotte Street, admittedly the superior thoroughfare, is hardsurfaced and runs in an easterly-westerly direction. Hiawatha runs southerly therefrom forming what is commonly known as a “T” intersection. On the north side of Wyandotte Street and offset some twenty feet westerly of Hiawatha Street is Pontiac Street. Both Hiawatha and Pontiac Streets are hardsurfaced and approximately 18 feet in width. The record does not reflect the width of Wyandotte Street but does give the clear impression it is somewhat wider than the two mentioned inferior thoroughfares. At the time of the accident the weather was clear and the roadways dry.
Mrs. Hester, accompanied by her guest passenger, Mrs. Bonnie Harding, was driving westerly along Wyandotte Street, followed for several blocks by a vehicle driven by defendant Stewart at a speed of approximately 25 miles per hour and a constant distance estimated at between 15 and 20 feet to the rear of plaintiff’s vehicle.
Simultaneously, Mrs. Langlois was proceeding northerly on Pliawatha Street traveling partially in the left or southbound lane of travel with the intention of turning left on Wyandotte and thence right onto Pontiac Street. Wishing to turn left onto Pliawatha Street, Mrs. Hester placed her left turn indicator in operation and gave a hand signal indicative of a left turn when she reached a point approximately one-half block from the intersection. Mrs. Hester, traveling at a reasonable and lawful rate of speed thusly commenced her left turn but was compelled to stop to avoid colliding with Mrs. Langlois who proceeded onto the favored thoroughfare directly into the path of plaintiff’s left turning automobile.
The testimony leaves not the slightest doubt that had Mrs. Langlois remained on the right side of Pliawatha Street and stopped at the intersection as she should,. Mrs. Hester could have completed her turn normally and without incident. It likewise appears that, after having effectively blocked plaintiff’s entry onto Hiawatha Street, Mrs. Langlois paused, but did not come to a complete stop, and then drove onto Wyandotte Street in what she thought was a maneuver designed to aid plaintiff by clearing the street so that plaintiff might turn as desired.
Defendant Stewart slowed the speed of his vehicle upon observing plaintiff’s left turn signal. When appellee commenced her turn, Stewart accelerated the speed of *433 his vehicle to continue on in the right or outside westbound lane but, when he reached a point estimated at between five and ten feet from the rear of the Hester automobile, plaintiff stopped suddenly to avoid colliding with Mrs. Langlois. Stewart applied his brakes and attempted to swerve to the right but the left front fender of his vehicle struck the right rear fender of plaintiff’s car. Mrs. Langlois continued across Wyandotte Street and turned right onto Pontiac where she stopped upon hearing the noise of the collision between the Stewart and Hester automobiles.
Conceding she was traveling partly within the left lane of Hiawatha Street, Mrs. Langlois sought to exonerate herself from this breach of the traffic laws by explaining she normally drove on the left at this particular place because she usually found cars parked along the right side making travel on the right impossible. She further contended she came to a stop and, upon observing that her vehicle impeded plaintiff’s turn, elected to proceed forward rather than back up in order to permit plaintiff to complete her left turn. She could not say, however, whether any cars were parked along the right side of Hiawatha Street on the day in question or, if so, whether any were parked near the intersection.
Succinctly stated, defendant Stewart contends the sole cause of the accident was plaintiff’s emergency stop necessitated by the negligent action of Mrs. Langlois in failing to accord appellee the right of way. In this regard, it is further argued Stewart cannot be charged with anticipating plaintiff’s sudden stop in the process of negotiating a left turn, consequently, as to him, her stop constituted an emergency not of his creation and his failure to avoid striking plaintiff was, under the circumstances, not a proximate cause of the accident.
Our learned brother below concluded the accident was proximately caused by the “concurrent and combined negligence” of defendant drivers and that Mrs. Hester was free of contributory negligence.
That Mrs. Langlois was guilty of negligence proximately causing the collision is patent upon the face of the record. By her own admission she was traveling in the center of Hiawatha Street “partly in the left lane.” While Mrs. Langlois maintains she stopped at the intersection before proceeding across Wyan-dotte Street, we believe the evidence preponderates in favor of the conclusion she did not stop but merely reduced the speed of her vehicle. In so doing, she was guilty of negligence in traveling on the wrong side of the street and failing to yield the right of way to Mrs. Hester. Her position in the wrong lane of travel effectively impeded Mi-s. Hester’s completion of the intended turn, forcing the latter to make an emergency stop in order to avert a collision. That Mrs. Hester was alert to the situation is attested by the circumstance she did in fact stop and avoid contact with the Langlois car despite its unexpected emergence into the intersection. Upon observing the approach of the Langlois vehicle, Mrs. Hester could assume it would stop and yield the right of way. Mrs. Langlois’ dereliction in failing to stop was a proximate cause of the ensuing collision between the Hester and Stewart automobiles.
Learned counsel for defendant Stewart concedes the general rule to be that the driver of a following vehicle must have his automobile under control and drive at such speed and distance behind the car ahead as to be able to stop in the event the lead car should stop or slow its speed. Counsel argues, however, the instant case falls within the now well recognized and firmly established exception to the effect a following driver is not required to anticipate an emergency stop by a car ahead and, in such eventuality, is absolved from liability if he does everything within his power to avoid a collision. In support of *434 -this position counsel cites Schexnaydre v. Becnel, La.App., 142 So.2d 555, which held the burden of proof does not necessarily devolve upon the defendant to exculpate himself from negligence by a preponderance of evidence, simply because he drove his car into the rear of a vehicle traveling .ahead. Our perusal of the cited authority reveals it makes general pronouncements regarding a purported change in the jurisprudence but cites no case in point. We .also note the court found the following -driver guilty of negligence proximately causing the accident therein sued upon.
Counsel for defendant Stewart has also ■cited numerous cases wherein the following •driver was exonerated from liability on the ground a sudden emergency arose under ■circumstances which could not be reasonably anticipated. Among the cases so cited .are included several wherein a sudden stop, made without warning or signal, was negligently made by the lead driver. Also in■cluded, are instances of emergencies cre•ated by third persons causing the lead ■driver, proceeding straight ahead, to make a sudden, unsignaled stop without negligence on his part.
The exception relied upon by esteemed counsel for defendant Stewart is explained .at some length in Rhea v. Daigle, La.App., 72 So.2d 643, from which we approvingly quote the following:
“We likewise find in 104 A.L.R. at page 500, the following:
‘However, it has also been held that the driver of a trailing car is not required to adhere to the rule that he must be able to stop it within his clear range of vision, in instances where hazards arise that could not have been .anticipated. Rankin v. Nash-Texas Co., Tex.Civ.App.1934, 73 S.W.2d 680. In this case, although the court stated: “In trailing other automobiles, a motorist must govern his speed or keep back a reasonably safe distance so as to provide for the contingency of the automobile in front suddenly stopping or decreasing its speed, so that he can stop or decrease his speed to avoid a collision, or can turn out safely to pass the vehicle in front. One cannot run down a vehicle proceeding in the same direction without having been guilty of some negligence in the operation of his own, unless it appears that the collision was due to the contributory negligence of the driver of the other vehicle. The collision, under ordinary circumstances, furnishes some evidence of negligent acts of omissions on the part of the driver of the trailing vehicle which ordinarily calls upon the driver of the rear vehicle to explain, and usually presents a question of fact for the determination of the jury,” it held that where a motorist ran into the rear of another car when it was suddenly stopped because of the sudden and abrupt appearance of another automobile backing into its path, such a situation did not “present an ordinary circumstance of the front car stopping as to raise a presumptive issue of negligence of the operator of the rear vehicle.” It was further held that the doctrine of res ipsa loquitur had no application where the record was silent as to any specific acts of negligence on the part of the rear motorist.
‘Similarly, in Cook Paint & Varnish Co. v. Hickling, 8 Cir., 1935, 76 F.2d 718, where defendant’s truck came to an abrupt stop because of a mechanical breakdown, without any warning to the driver of the vehicle in the rear, it was held that the overtaking motorist, who was injured when his car collided with the truck ahead, could not be required to exercise the care of an ordinarily prudent person when confronted with an emergency, nor expected to adopt the wisest choice in his endeavor to avoid colliding with the vehicle ahead, and therefore could not be held guilty of contributory *435 negligence in failing to stop within “the assured clear distance ahead.” ’ ”
It appears the jurisprudence which exonerates the following motorist from liability for striking a lead motorist from the rear, is limited to circumstances found to be totally unexpected. We consider obiter dicta those pronouncements in Schexnaydre v. Becnel, supra, which indicate there is no longer a shifting of burden to the following driver to exculpate himself from blame when he collides with a vehicle ahead, because the driver in the cited case was found guilty of negligence. We are in accord, however, with the views therein expressed to the effect each case must be analyzed with great care and determined in the light of its own peculiar circumstances, and that the following driver will be exonerated where he can reasonably explain the cause of his running into the rear of the car ahead, provided, of course, his own lack of caution has not contributed to the accident and he has made reasonable efforts to avoid a collision.
In Nomey v. Great American Indemnity Company, La.App., 121 So.2d 763, the lead driver was adjudged grossly negligent in stopping suddenly in the main traveled portion of the highway without warning in the absence of an emergency or circumstances which would indicate to the following driver the necessity of anticipating an emergency stop without signal or warning. The following pronouncement of law contained in the Nomey case, supra, is deemed applicable to the case at bar:
“We think our jurisprudence has firmly established the rule that failure to maintain a specified distance between automobiles does not of itself constitute negligence; that a driver is entitled to rely upon the assumption that the car ahead is being driven with care and caution in accordance with the law of the road and that the driver thereof will not commit acts of negligence which will endanger the following traffic.
As long ago as 1935, in Hill v. Knight [La.App.], 163 So. 727, this court recognized and approved the rule that a following driver should drive at such speed and maintain such an interval as would enable him to avoid collison (sic) with a leading car under circumstances which should reasonably be anticipated. This rule was followed and elaborated upon in Rhea v. Daigle [La.App.], 72 So.2d 643, decided by our brethren of the First Circuit (writs denied), in which were cited, inter alia, Adams v. Morgan, La.App., 173 So. 540; Reeves v. Caillouet, La.App., 46 So.2d 373. Reference is also made to Peranio v. Superior Ins. Co. et al., La.App., 76 So.2d 315 (writ granted); and Soudelier v. Johnson, La.App., 95 So.2d 39.” (Emphasis by the Court)
Henderson v. Shewbart, La.App., 112 So. 2d 727, cited and relied upon by counsel for appellant Stewart, does not involve a rear end collision. Although the cited case involved the question whether defendant was driving too closely, the issue was raised on the following facts: The plaintiff was driving in a westerly direction. A Buick traveling in the opposite direction suddenly skidded into the wrong lane while attempting to avoid a parked vehicle, was struck on the right side by the plaintiff’s automobile, spun around and was then struck head on by defendant’s car which had been following the Buick. In exonerating defendant driver, the court held he could not reasonably be required to anticipate the occurrence of a collision in his immediate path which would result in the obstruction of his lane of travel.
Peranio v. Superior Insurance Company, La.App., 76 So.2d 315, also cited and relied upon by counsel for defendant Stewart is likewise distinguishable on its facts. There the following driver was proceeding behind a funeral procession on a straight highway. He heard the sudden application of brakes and observed the cars ahead coming to a stop. It developed that someone ahead had a blowout and made a sudden *436 stop. The following driver applied his brakes but skidded into the car ahead because his brakes were rendered ineffective due to a crack in the surface of the roadway. The Court relieved him of liability on the ground he was confronted with a sudden emergency, not of his own making and reacted thereto in a reasonable manner.
Soudelier v. Johnson, La.App., 95 So.2d 39, cited and relied upon by counsel for Stewart, involved an instance wherein the lead driver was in head-on collision with a car which swerved suddenly from its own lane of travel directly into the path of the lead car. The following driver then struck the rear of the lead vehicle.
Finally, counsel cites Jones v. Armstead, La.App., 169 So.2d 268, which we deem inapposite to the case at bar. In the Jones case, supra, the lead driver, traveling partially in the left lane, made an abrupt right turn into a private driveway across the path of the following motorist.
It becomes apparent all the cases cited and relied upon by counsel for appellant Stewart involved instances presenting emergencies occurring on a straight stretch of roadway under circumstances such that the following driver could not reasonably be expected to anticipate their happening.
Insofar as Stewart’s liability is concerned, the question appears to be whether, under the circumstances, the stop by plaintiff was reasonably to be anticipated and whether he was free of negligence and did all he could to avoid the accident. It is clear that Stewart attempted to stop immediately upon becoming aware of the stop by plaintiff, but the question remains was this sufficient under the circumstances ? In the instant case the lead driver admittedly gave proper and timely signal of her intention to turn. Under such circumstances we believe the following motorist should decrease rather than increase the speed of his vehicle especially when following the lead vehicle at a distance of between fifteen and twenty feet. In such event prudence dictates the driver of the following vehicle should not accelerate until his lane of travel has been cleared. Had Stewart been keeping a proper lookout he should have noted the presence of the Langlois car appoaching the intersection.
Under the circumstances he could reasonably be expected to anticipate plaintiff might stop or reduce her speed before completing the turn. Experience teaches that generally a vehicle which has begun a turn may be expected to continue without stopping in the absence of an obstruction, but also that a pause or stop, necessitated by vehicular or pedestrian traffic, is not unusual and should be anticipated. We conclude Stewart was negligent in accelerating his vehicle while traveling in such close proximity to the vehicle ahead and before the lead vehicle cleared his lane of travel.
The defense of contributory negligence on the part of Mrs. Hester is based on the circumstance that at the time of the accident, the applicable law expressed in LSA-R.S. 32:235, subd. B, required that in turning a driver “shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning to the left.” (cf. LSA-R.S. 32:101(2), adopted in 1962, which provides: “Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.”)
 The record discloses the front of Mrs. Hestor’s vehicle was in the southeast quadrant of the intersection when the accident occurred, therefore she was turning to the left of the center of the intersection, in contravention of the then existing law. We do not believe, however, her action in this respect contributed to the accident. Counsel for Mrs. Langlois argues that had Mrs. Hester remained in the right lane of traffic beyond the center of the intersection until she could determine that an unimpeded left turn could be made, plaintiff worrld have stopped and Stewart would also have stopped thus avoiding an accident. On this theory counsel argues that plaintiff’s com *437 mencement of the left turn lured Stewart into the false belief plaintiff was clearing the right lane and Stewart could proceed. However, plaintiff’s testimony shows that when she began her turn she assumed Mrs. Langlois would return to her proper side of the street and stop in order to let traffic on the preferred roadway proceed. Nothing in the record justifies the conclusion plaintiff should have anticipated she •could not make an unimpeded turn until the last moment when Mrs. Langlois carelessly proceeded onto the superior roadway without stopping. Had plaintiff proceeded beyond the center of the intersection, she would have been equally entitled to begin her turn on the assumption Mrs. Langlois would stop and not continue into the intersection. Mrs. Langlois’ failure to stop would have presented the identical exigency necessitating an emergency stop by plaintiff. It is further contended a sudden stop by plaintiff was unnecessary inasmuch as plaintiff stated she observed Mrs. Langlois •approaching the intersection partially in the left lane of travel. However, Mrs. Hester assumed, as she had a right to do, that Mrs. Langlois would return to her proper side of the street and clear the way for preferred traffic. Under the circumstances, we find Mrs. Hester free of negligence proximately causing the accident.
Immediately following the accident plaintiff was taken to the hospital where she was seen by Dr. Perry L. Chesney, ■General Surgeon, who found her complaining of neck pain, nausea and vomiting. Examination disclosed cervical muscle spasm on both sides of the neck extending to the tips of the shoulders and slightly down the midline of the back. X-rays revealed a roughening of the area between C-5 and C-6 indicating a possible chip, ligamental injury or dislocation but no evidence of fracture. Dr. Chesney prescribed sedation and muscle relaxants and permitted plaintiff to return home the following day. Plaintiff was seen by Dr. Chesney on several occasions and on May 14, 1961, resumed work at his suggestion. On June 30, 1961, plaintiff complained the pain had progressed into her right hip and leg. Dr. Chesney diagnosed plaintiff’s condition as acute cervical muscular strain with a possible chip fracture. During the period of his treatment Dr. Chesney found plaintiff alternately described her condition as improved and deteriorated. When plaintiff failed to respond to prescribed treatment he referred her to a neurosurgeon in December, 1961.
Dr. Duane Forman, Neurosurgeon, saw plaintiff in his office on December 1, 1961, upon referral by Dr. Chesney. At this time plaintiff related a history of having been injured in an automobile accident and complained of pain in the neck, low back, shoulders and right lower extremity. Dr. For-man detected no muscle spasm, found some tenderness of the back and neck but noted movements of the neck were good in all directions. Suspecting a possible ruptured disc, Dr. Forman hospitalized plaintiff in February, 1962, for a myelogram and disc-ogram which, together with X-rays taken, proved negative. In essence, Dr. Forman concluded plaintiff sustained a sprain of the cervical and lumbar spine from which she should eventually recover.
While in the hospital for the myelogram and discograms ordered by Dr. Forman, plaintiff was also seen by Dr. Moss M. Bannerman, Orthopedic Surgeon. Plaintiff’s chief complaints were of pains in the neck, back, chest and leg which, according to plaintiff, grew more intense with the passing of time. Dr. Bannerman noted good range of neck motion with some slight restriction upon forward bending. He found no muscle spasm and observed that reflexes were equal. Examination of the X-rays and myelograms ordered by Dr. Forman proved negative. Dr. Bannerman prescribed cervical traction, muscle relaxants and diathermy followed by assigned exercise. From symptoms related, Dr. Ban-nerman found plaintiff’s back pains most troublesome. He could not, however, account for plaintiff’s chest pains. In the course of his treatment, Dr. Bannerman *438 detected plaintiff had flat feet and prescribed corrective shoes to relieve this condition. Dr. Bannerman noted some improvement in plaintiff’s condition between February and April, 1962, at which latter time plaintiff’s complaints of pain indicated she was becoming worse. Plaintiff’s condition was diagnosed by Dr. Bannerman as cervical strain with possible lumbar sprain. He has seen plaintiff monthly since February, 1962 and finds she still complains of pain in the low back and right side but appears to be improving. His prognosis is eventual complete recovery. As did all the medical witnesses, excepting on the initial examination by Dr. Chesney, Dr. Banner-man found plaintiff’s complaints largely subjective but compatible with the type of injury received.
In substance plaintiff testified she still experiences pain in the chest, neck and shoulders which is discomforting but does not prevent her from performing the duties of her position as supervisor for a concern which manufactures cookies and related products. She missed five weeks work since the accident but has worked the remainder of the time despite her pain.
Considering the injuries sustained by Mrs. Hester, we believe the award of $7,-000.00 allotted her by the trial court is excessive and should be reduced. We find the injuries received by plaintiff in some measure comparable to, but apparently more enduring than, those sustained by the plaintiff in Roy v. United Gas Corporation, La. App., 163 So.2d S87, wherein an award of $3,000.00 was deemed adequate. We conclude, therefore, an award of $4,000.00 will adequately compensate Mrs. Hester for her injuries.
Accordingly, it is ordered, adjudged and decreed the judgment of the trial court be and the same is hereby amended by reducing the award to plaintiff, Bertha F. Hester, from the sum of $7,000.00 to the sum of $4,000.00, and in all other respects the judgment of the trial court be affirmed.
Affirmed as amended.