## CIRCUIT COURT OF THE CITY OF RICHMOND

Annicelee H. Coward

v.

City of Richmond et al.

### Case No. LA-2780

By Judge T. J. Markow

September 24, 1996

This matter is before the court on a Motion to Quash Subpoena Duces Tecum and/or for Protective Order filed by the City of Richmond and the Chief of Police (hereafter the City). Having considered the arguments, memoranda, and motions of counsel, the Court overrules the motion. The Court's findings follow.

*Factual and Procedural History*

Plaintiff filed a five-count complaint against the City of Richmond and four members of the Richmond Police Department in October of 1995. Subsequently, in January of 1996, Plaintiff filed a second suit against Deputy Police Chief Frederick Russell alleging substantially the same facts. This second suit has since been dismissed.

Plaintiff claims that a coworker detective assaulted and battered her on five separate occasions between March and July, 1995. At the time of the alleged incidents, Plaintiff was employed by the City of Richmond Police Department as a police detective. After each incident, Plaintiff allegedly complained to her superiors.

Following the latest complaint by Plaintiff in July of 1995, an internal investigation of the complaints was conducted by the Department. The Department interviewed all officers and civilian employees in the detective

division. The Department, in all, conducted sixty-one interviews. Following the interviews, the investigators made written conclusions and findings and reported to their superiors.

Plaintiff filed a request for Subpoena Duces Tecum of the Chief of Police. The Subpoena sought production of the documents generated as a result of the internal investigation. The City and the Police Chief have moved to quash this Subpoena Duces Tecum.

### Analysis

To support the Motion to Quash, movants argue that the materials sought by Plaintiff are privileged. To reach this conclusion, they draw analogies to other areas of the law.

First, the City argues that Police Investigative Files are considered confidential under the Freedom of Information Act (FOIA). Acknowledging that the Plaintiff's Subpoena Duces Tecum is not a matter within the province of the FOIA, the City nonetheless argues that the public policy underlying that statute should be controlling here. The public policy in question is centered around encouraging participation in police investigations. The FOIA keeps criminal investigatory files confidential in order not to stifle the likelihood that witnesses will provide accurate and complete statements to the police. In response, Plaintiff points out that the information was not gathered during a criminal investigation. Further, Plaintiff argues, the FOIA does allow disclosure of criminal incident information once the danger to an ongoing investigation is passed.

Second, the City addresses the criminal discovery rules. Again, it points to the public policy underlying the prohibition on discovery. Police notes and statements by witnesses arising from a criminal investigation have been held to be confidential. *Bellfield v. Commonwealth*, 215 Va. 303 (1974). It is argued that this holding is based on the public policy of ensuring that citizens will not be hesitant to speak to the police and report important information concerning matters under investigation. The other cases cited by the City are similar in holding and reasoning. *See, e.g., Hackman v. Commonwealth*, 220 Va. 710 (1980); *Currie v. Commonwealth*, 10 Va. App. 204 (1990). Each of these cases, however, involved a criminal investigation and statements made by citizen witnesses. The City argues that since the allegation here could have led to criminal charges, the materials produced in this investigation should be likewise privileged. Again, Plaintiff points out that this was not a criminal investigation or

prosecution of a case. As such, Plaintiff contends, the privilege does not apply.

The final ground on which the City challenges the Subpoena Duces Tecum is the claimed availability of other sources through which Plaintiff can obtain the same information. Specifically, it claims that the Plaintiff could interview that same sixty-one people, thereby making the need for this discovery moot. The Plaintiff counters by arguing that as this is a Subpoena Duces Tecum of a non-party, not a Request for Production of a Party, Plaintiff need not rely on other sources for the information. Plaintiff does not concede that the information could be easily obtained from other sources, but maintains that this is not the standard for this type of discovery.

The movants bear the burden of showing that the court should sustain their motion. They have failed to do so. No authority is cited which establishes that there is a privilege preventing the disclosure of these documents. The law cited is applicable to this case only, if at all, through public policy concerns and analogy.

The public policy, ensuring the confidentiality of a police criminal investigation, is a laudable goal, but is not affected by this case. This was not a criminal investigation. It was simply an employer conducting an internal investigation concerning the complaints of one employee about the behavior of another employee. Under these circumstances, the fact that the employer is the police department does not create a privilege against discovery.

For the reasons outlined above, the Motion to Quash is overruled. Defendants' objections are noted.

November 14, 1996

This matter is before the court on Defendant City of Richmond's Plea of Governmental Immunity. Having considered the arguments and motions of counsel, the Court sustains the Plea. The Court's findings follow.

<em>Factual and Procedural History</em>

Plaintiff filed a five-count complaint against the City of Richmond and four members of the Richmond Police Department in October of 1995. Subsequently, in January of 1996, Plaintiff filed a second suit against Police Chief Frederick Russell alleging substantially the same facts. This second suit has since been dismissed.

Plaintiff claims that detective Thomas Leonard of the Police Department assaulted and battered her on five separate occasions between March and July, 1995. At the time of the alleged incidents, Plaintiff was employed by the City of Richmond Police Department as a police detective. After each incident, Plaintiff allegedly complained to her superiors. Plaintiff further alleges that the Police Department and the City failed to act on these complaints, thereby condoning and exacerbating the injuries of which Plaintiff complains.

The City has filed this Plea of Governmental Immunity on the basis of the governmental function of the police department and the intentional nature of the tort alleged by plaintiff.

### Analysis

"The doctrine of sovereign immunity protects the state from liability for claims of negligence asserted against it." *Coppage v. Mann*, 906 F. Supp. 1025 (E.D. Va. 1995). The public policy behind the existence of such a doctrine is based in the protection of the public purse and the preservation of the orderly administration of government by protecting the state from burdensome interference with its performance of governmental functions. *Messina v. Burden*, 228 Va. 301 (1984).

In this case, the Court must address a question about which little has been written or decided in the Commonwealth: whether a municipality is cloaked with immunity preventing its liability for intentional torts.

Unlike the state itself, a municipal corporation is seen as having a two-fold purpose: public functions and private functions. 13B M.J., *Municipal Corporations*, § 102 (1988). In the case of public functions, i.e. functions performed for governmental purposes, the municipal corporation enjoys the same immunity as the Commonwealth from which it derives its powers. *Id.* On the other hand, in the exercise of private functions, the municipality is liable for damages just as a private corporation would be. *Id.*

In this case, the function being performed is that of operating and maintaining a police force. The Plaintiff conceded during oral argument that this is a governmental function. As such, the City is immune from liability arising out of its negligence. However, since this case concerns an intentional tort, the analysis must not stop there.

Some states may consider the occurrence of intentional torts to be outside the scope of a municipality's exercise of its governmental powers and therefore not within the protection afforded to governmental activities by

the immunity doctrine. 57 Am. Jur. 2d, *Municipal, County, School, and State Tort Liability*, § 179 (1988). Other states might say that the intentional torts being complained of are beyond the scope of the governmental authority conferred on the municipality, and therefore, the municipality cannot be said to have authorized or sanctioned the actions taken by its agents. *Id.* § 154. If a state adopts this reasoning, they would find that a municipality could not be liable for acts it did not authorize or ratify, and it does not have the power to authorize or ratify intentional torts, therefore, the municipality is not liable for them. *Id.* These acts are generally referred to as being *ultra vires*.

Virginia has not chosen which of these paths to follow. It is clear that the Virginia Tort Claims Act, Va. Code Ann. §§ 8.01-195.1 to 8.01-195.9, abrogates governmental immunity in the case of negligence. Additionally, cases have held that a government employee, who usually enjoys the immunity afforded to the government if he or she is acting as an agent, is clearly outside the scope of his or her authority when an intentional tort is committed, and therefore, the employee cannot claim immunity. *See, e.g., Fox v. Deese*, 234 Va. 412 (1987). However, neither the General Assembly nor the Supreme Court has yet addressed the issue at bar.

A look to other jurisdictions uncovers that in states which have found municipal corporations liable for willful acts, the doctrine of governmental immunity has been abrogated, and the municipality is held liable under the doctrine of respondeat superior. *See, e.g., City of Miami v. Simpson*, 177 So. 2d 435 (Fla. 1965) (superseded on other grounds). As stated above, the immunity doctrine has been abrogated in Virginia. However, it has not been completely destroyed. *See Bracken v. Merrill*, 27 Va. Cir. 208, 211 (1992).

Since the statute does not expressly abrogate the immunity doctrine in situations such as this, the Court holds that the doctrine continues to protect municipalities from liability for intentional torts committed while performing a governmental function. *Accord Bracken v. Merrill*, 27 Va. Cir. 208 (1992) (finding governmental immunity for a state agency in a case involving the intentional tort of false arrest); *Slaughter v. Duling*, 33 Va. Cir. 476 (1972) (finding governmental immunity for the City of Richmond for the intentional conduct of the City directly and through its agents and employees).

For the reasons outlined above, the Plea of Governmental Immunity is sustained and the City of Richmond is discharged as a Defendant in this case.