REID, Judge.
Plaintiff Mrs. Delma Morgan brought suit against W. J. Whittington, Employers Liability Assurance Corporation, Ltd., the liability insurer of her husband William W. Morgan, as a result of an accident which happened on or about March 12, 1964 at or about 5:00 P.M. on Louisiana Highway No. 43 in Livingston Parish about three and a half miles north of the city limits of Albany, Louisiana.
Plaintiff was riding as a guest passenger in her husband’s 1964 Ford pickup truck proceeding south on said Highway 43. Her husband, William W. Morgan, was being followed by the defendant W. J. Whittington driving a 1957 Volkswagen automobile. Morgan was talking with his wife when he realized that he had passed a driveway in which he had intended to turn. He applied his brakes, slowing down, getting ready to turn into another .driveway to back out and return to the driveway where he had originally intended to turn.
Whittington started to pass the pickup truck when he observed a car approachihg and attempted to pull back behind the Morgan vehicle, colliding with the rear thereof. Mrs. Morgan received injuries which will be discussed later.
There was a companion suit filed by W. J. Whittington against the Employers Liability Assurance Corp. Ltd., seeking damages alleging that the accident happened as a result of negligence of Morgan, stopping suddenly without giving the proper warning. This case was tried jointly with the instant case but no appeal seems to-have been taken, and the only matter before this Court is the appeal by the Employers Liability Assurance Corporation from the judgment rendered by the Lower Court in the amount of $7500.00.
*913 Defendant, Employers Liability Assurance Corporation answered denying any negligence on the part of Morgan and in the alternative plead contributory negligence on the part of Mrs. Morgan, under the facts to be proven in this case.
The appellants complain of two errors by the Trial Court: First, in determining that Morgan was guilty of negligence proximately causing the accident, and second, abusing his discretion in making an excessive award to the plaintiff for the injuries which she allegedly suffered, received in the accident sued upon.
Morgan testified that he was driving along talking with his wife and he realized that he had passed the driveway in which he intended to turn. His testimony regarding the accident is as follows:
“All right, I was going south. I had started to Miss Aydell Stewart’s, my wife and I was driving along talking. I passed her driveway but Louis Kin-chen’s driveway was just south of it and I said, well I will just slow down. I had looked down in my mirror and seen this car in the back of me — you come down a hill and then you raise a little incline but not as much as you-do coming off and I come off of that hill. And when I seen I had passed her driveway I stepped on my brakes to slow down and get down low enough and let this car come around me. I never noticed the oncoming car. I don’t yet remember seeing it myself. But I stepped on my brake to let him come around and when I pulled my truck down why he hit me. I was going to let him come around before I reached the driveway that I was going to turn in on, you see,'so I could make a'swing to come on in it.
******
Q : Mr. Morgan did you give any signal whatsoever that you were going to slow down ?
A: I told the cop I didn’t give no arm signal but my brake lights was on and I turned my blinker on when I got on my brakes.
Q: How far was this car behind you when you seen it?
A: When I looked down in my mirror and seen it?
Q: Yes sir.
A: The first time I saw it, it was about 200 yards and then when I glanced down in my mirror again, I would say it was about 200 feet.
Q: Let me ask you this, how fast were you travelling before you stopped your car or slowed it down?
A: Well, as a guess, I would say I trav-elled about 40 or it could have been more, or it could have been less. I wasn’t watching the speedometer.
Q: In other words, you stopped the car pretty suddenly ?
A: Yes sir. It wasn’t completely stopped, it was still moving but I brought it down.
Q: To two or three miles an hour, is that correct ?
A: Well, two or three miles an hour is real slow but definitely I don’t know, just how slow it was.
Q: Well, hadn’t you almost come to a stop?
A: Pretty near it.
Q: .You didn’t start stopping your car • until the man was about 200 feet from you, is that correct?
A: Well, when I stepped on my brakes I wasn’t looking at my light. The last time I had noticed him he was about 200.
■ Q: In other words he could have been closer when you started stopping?,
*914 A: I couldn’t say about that because when I stepped on my brakes I never looked in the mirror.
Q: You did not see the car coming in the opposite direction ?
A: I didn’t.”
As opposed to this we have the testimony of Mr. Whittington as a statement about how it happened:
“Well, I was traveling along, just a normal speed. I don’t know just exactly how fast and I pulled over to pass Mr. Morgan and this car was coming and I saw it was coming in such a speed that I had to do something so I fell in behind Mr. Morgan and when I did he set her down in front of me.
Q: When you fell behind him, how far back were you?
A: I was about two or three car lengths behind him and he just set down right there, he slid about IS foot and let it roll I imagine, making two or three miles an hour when it was rolling, after he set her down.
Q: And what happened then?
A: I just hit him, that is all.
Q: You rear ended him?
A: Yes sir.
Q: Was oncoming traffic coming around the curve ?
A: There was a little curve and this car was making such a speed there wasn’t any way for a man to pass him and he didn’t give me any sign at all or nothing, he was going to set her down.
Q: Any arm signal?
A: No sir.
Q: Give you a light signal?
A: The tail light might have come on, I don’t know, I didn’t see any tail light. He just set her down right there in the road.
Q: You are positive he didn’t give you any signal?
A: No, no signal at all.”
Plaintiff produced two other witnesses Trooper James C. Stone and Gariel White. Trooper Stone testified that the Morgan vehicle had slowed to approximately three miles per hour about 330 feet from the driveway. He further testified that the driver of Morgan’s vehicle stated that he had made no turn signal. He testified that the driver of the Whittington vehicle said that he was coming south behind the Morgan vehicle and was going to pass him when the approaching vehicle caused him to have to turn back into the south bound lane and when he did so he collided into the rear of the Morgan truck. The Trooper charged Morgan with impeding the flow of traffic and Whittington with following too close.
White testified corroborating Whit-tington’s statement that there was an approaching vehicle coming from the opposite direction. He was approaching from the opposite direction following the car in front of him. He did not see the accident.
The Trial Judge held that the accident was caused by the negligence of Mr. Morgan in the following opinion, to-wit:
“In the Court’s opinion, the proximate cause of the accident was caused by the negligence of Mr. Morgan, wherein he passed the original driveway, where he had intended to turn into and immediately after slowed down. He stated that he slowed down for the reason of giving the car behind him a chance to go around him but he slowed to practically no speed whatever, and didn’t give any indication —any arm signal by his own admission or any other signal until after he had already put his brakes on. And he didn’t know how far Mr. Whittington’s car was behind him when he did that.”
*915 With this finding of fact we are in accord. We, therefore, find as did the Judge of the Lower Court that the proximate cause of this accident was the negligence of Morgan in bringing his car to a sudden stop, or practically stopped (3 miles an hour) in front of the oncoming car without giving any signal. Mr. Whitting-ton was driving at a lawful rate of speed and had a right to assume that Morgan would use every precaution when stopping suddenly to avoid oncoming traffic from the rear.
Morgan’s testimony was that he had observed the car approaching first at 200 yards, then at 200 feet and he knew that the Whittington car was behind him and he should have proceeded further before putting on the brakes or given some signal of what he was going to do in order to warn Whittington that he was about to stop or make a right hand turn. This accident does not involve a left hand turn in front of oncoming traffic.
We believe that the case of Nomey v. Great American Indemnity Co., La.App., 121 So.2d 763 is determinative of the issues in this case. This case holds as follows -.
“We think our jurisprudence has firmly established the rule that failure to maintain a specified distance between automobiles does not of itself constitute negligence; that a driver is entitled to rely upon the assumption that the car ahead is being driven with care and caution in accordance with the law of the road and that the driver thereof will not commit acts of negligence which will endanger the following traffic.
As long ago as 1935, in Hill v. Knight, [La.App.,] 163 So. 727, this court recognized and approved the rule that a following driver should drive at such speed and maintain such an interval as would enable him to avoid collision with a leading car under circumstances which should reasonably be anticipated. This rule was followed and elaborated upon in Rhea v. Daigle [La.App.,] 72 So.2d 643, decided by our brethren of the First Circuit (writs denied), in which were cited inter alia, Adams v, Morgan, La.App., 173 So. 540; Reeves v. Caillouet, La.App., 46 So. 2d 373. Reference is also made to Peranio v. Superior Ins. Co. et al., La.App., 76 So.2d 315 (writs granted); and Soudelier v. Johnson, La.App., 95 So.2d 39.
In a number of the cited cases our courts have referred to a rule as stated in Blash-field’s Cyclopedia of Automobile Law and Practice, Volume 2, page 107, and in American Jurisprudence, Volume 5, page 656.
A restatement of the rule, of which we particularly approve, is found in American Jurisprudence, 5 A, Section 204, page 354, and reads as follows:
‘The driver of an automobile is not bound to anticipate negligence on the part of another driver, in the absence of anything to indicate otherwise. The care and diligence of the operator of a motor vehicle is to be measured in view of the assumption that others will not drive in a negligent manner, but this assumption does not apply if one sees, or by the exercise of ordinary care and prudence should see, that some other driver will not obey the law, or is unable to do so.’ ”
See also Little v. Hughes, La.App., 136 So.2d 448; Parker v. American Home Assurance Co., La.App., 162 So.2d 151; Reeves v. Caillouet, La.App., 46 So.2d 373.
This brings us to the question of quantum. The Trial Judge awarded $7500.00 to Mrs. Morgan for pain and suffering. The appellant claimed that this amount is excessive and should be reduced. The appellee has not filed an answer or taken any appeal on the question of quantum and is satisfied with the award.
*916 Plaintiff consulted Dr. J. A. Thames of Hammond and he was her treating physician. Dr. Thames in his report of March 13, states that he diagnosed her injuries in addition to contusions as being neck and back injuries. She was treated with •diathermy and infra red, given analgesics, muscle relaxants and told to return. At that time he felt that she should be disabled for two or three months. Mrs. Morgan saw Dr. Thames practically every day -until July 13, 1964, complaining of pain and discomfort. Dr. Thames recommended that she see Dr. J. Willard Dowell an orthopedist surgeon in Baton Rouge.
Dr. Dowell recommended the same treatment be continued and that she also use traction for her neck. This treatment consisting of infra red diathermy and medication and traction continued until December 8, 1964. Dr. Dowell saw Mrs. Morgan on three occasions. On each of these occasions Mrs. Morgan complained of pain in her neck and the lower lumbo region. At that time Dr. Dowell stated there was full range of motion of the neck although there were complaints of discomfort on extremes of motion. When he saw her in March, 1965 he found that she had made some improvement although she continued to complain. Her complaints in regard to back pains stated that it covered the area over the left kidney. Dr. Dowell recommended a neurological examination but it does not seem to ever have been done.
At no time was Mrs. Morgan hospitalized.
Numerous cases were cited by attorneys on both sides on the question of quantum.
We believe the facts in the case of Hester v. Stewart, La.App., 177 So.2d 430 are more nearly like the facts in this case. In that case the Court reduced the award of $7000.00 to $4000.00. Plaintiff was injured in 1961 and was still being treated at the time of the trial. Plaintiff sustained both cervical and lumbar sprains and apparently had not completely recovered at the time of the trial although it was anticipated that she would eventually make a full recovery. She was treated with surgical traction, muscle relaxants, diathermy and exercise. She was hospitalized for discograms and myelogram which were necessitated by the accident.
For these reasons we feel that the award is excessive and should be reduced to $4000.00.
For the foregoing reasons it is ordered that the judgment herein be amended by decreasing the’ award from $7500.00 to $4000.00 and as so amended it is affirmed.
Amended and affirmed.