LOTTINGER, Judge.
This appeal arises out of an automobile accident which occurred on February 11, 1965, some time between 6:30 and 7:00 P.M.. near the intersection of Weller Avenue- and Scenic Highway in the City of Baton Rouge. The accident occurred on Scenic-. Highway some distance north of its intersection with Weller Avenue at a time-when the road surface was wet from a rain or mist which was falling at the time-of and prior to the accident. In the area, of the place of the accident Scenic Highway is a four lane highway running in a north-south direction with two lanes of travel for northbound and two lanes of' travel for southbound vehicles.
The plaintiff, Anthony Fresina, was-operating a motorcycle in a northerly direction on Scenic Highway in the inside-lane of traffic. The defendant, Carey Sewell, was operating a Buick automobile-owned by his father in the inside lane-for southbound traffic, and was proceeding-in a southerly direction. The other defendant, James Guy, was operating a truck belonging to his employer, Royal Furniture-Company of Baton Rouge, Inc., and this-truck was also being driven in a southerly-direction on Scenic Highway, however, in-the outside lane. The Sewell vehicle was-insured by the defendant, Hartford Accident and Indemnity Company, and the-truclc belonging to Royal Furniture Company was insured by the Travelers Insurance Company.
The record reflects that immediately-prior to the time of the accident that the-. Royal Furniture truck executed a left turn, into the inside lane, causing the Buick. driver to apply his brakes and swerve into-the inside lane for northbound traffic where-the collision occurred between the right front of the Buick automobile and the motorcycle being operated by Anthony Fresina.
Following a trial by jury, the jury awarded judgment in favor of the plaintiff and against both defendants, finding that both defendants were guilty of negligence which proximately caused the accident. Thereafter Carey Sewell and his insurer, the *859 .Hartford Accident and Indemnity Com■pany, perfected this appeal. No appeal or answer to this appeal was filed by either ‘the plaintiff or by Royal Furniture Com-pany of Baton Rouge, Inc. and the Travel■ers Insurance Company.
The failure of the co-defendants and "the plaintiff to appeal or answer this appeal ’leaves us with but one question to be deter-rmined, that is whether or not the defendant, Carey Sewell, was in fact guilty of negligence which proximately caused the accident. The specifications of error urged íby the appellants are: 1. That the Trial Judge erred in allowing the attorneys for •.the defendants, James Guy, Royal Furniture •Company of Baton Rouge, Inc., and The Travelers Insurance Company to cross-ex-amine a co-defendant, Carey Sewell; and 2. That the jury erred in finding that ■Carey Sewell was negligent in any respect; .and 3. That the jury erred in finding ■■that Carey Sewell’s negligence, if any, was .a proximate cause of the accident; and •4. That the jury erred in failing to apply •the sudden emergency doctrine to the •vehicle operated by Carey Sewell in this .accident; and S. The jury erred in failing ■to find that the sole and proximate cause ■of the accident and all the resulting dam•ages was the negligence of James Guy. In view of the fact that all the specifications of error except the first are simply -the proposition that the jury was in error ■in finding that Carey Sewell’s negligence, if any, was a proximate cause of the accident, we will not deal with the specifications individually, but will consider them -as one.
There were five persons who saw all or ;a portion of the accident involved herein. 'These were Carey Sewell, the driver of the Buick automobile, Fairy Lee Sewell, Ihis sister, and a passenger in the Buick automobile, James Guy, the driver of the Royal Furniture Company truck, Phillip Heaton, and the plaintiff, Anthony Fresina. In addition to the testimony of these parties, only two of the witnesses testified to any facts which have any connection with the occurrence of the accident per se. One of these persons was the investigating police officer and the other was an expert called on behalf of The Travelers Insurance Company.
Let us first consider the testimony of Mr. Phillip Heaton, an impartial witness who at the time of the accident was a resident of the City of Baton Rouge. At the time of the accident, he was standing in the lobby of the Bruin Hotel where he had gone to meet his father. The Bruin Hotel fronts on Scenic Highway near the point where the accident in question occurred. The witness testified that he was standing at a corner of a picture window in the hotel lobby and from this vantage point he saw the accident occur. He stated that he was looking out of the window, saw the Royal Furniture truck pass and then saw a green Buick come by traveling in the left hand or inside lane of traffic. He stated that the Buick was just barely past him when he saw its brake lights come on and saw the rear end of the Buick start skidding around in a counterclockwise direction. At that time the front end of the automobile crossed the median strip and the car slid down the highway. When the Buick had reached an angle, perpendicular to the highway, so that it was across the highway, the motorcycle coming in the inside lane hit the car at about the hood. Mr. Heaton testified that he had to lean all the way to the window to see what finally happened to the car, and that as he did so, he saw that the Royal Furniture truck had almost come to a standstill in the left hand or inside lane. His testimony was to the effect that he did not believe that the Buick automobile was exceeding the 40 mile per hour speed limit immediately prior to the accident. Pie testified that there was no doubt in his mind whatsoever that the Royal Furniture truck turned from the right or outside lane into the left or inside lane immediately prior to the accident and that he had observed no signal of any kind by the Royal Furniture truck of his intention to turn *860 into the left hand lane prior to the turn. The record indicates that the Buick was proceeding down Scenic Highway toward the traffic light at the intersection of Scenic Highway and Weller Avenue in the left hand or inside lane, and that the Royal Furniture truck was proceeding in the same direction in the right hand or outside lane. Mr. Heaton’s testimony also indicates that there was a number of vehicles in the right hand lane which were stopped waiting for the light to turn from red to green so that they could proceed down Scenic Highway. His testimony is that the truck, which was slightly ahead of the automobile, suddenly and with no warning or signal of any kind, and as he approached the last car in the line of waiting cars in the outside lane swerved over into the left or inside lane. His direct testimony is:
A. “Well, as I said, when he applied his brakes, I looked up to see what or why. As he started to slide, I leaned against the window to get a better view. Well, at that time, the Royal Furniture truck had just about completed turning into the left hand lane.
Q. Was there anything else that you observed other than the Royal Furniture truck which would have accounted for the Buick driver applying his brakes?
A. Not that I saw, nothing. The Royal Furniture truck was immediately in front of it, the only object in front of it.”
Mr. Heaton also testified that as he leaned forward to ascertain the cause of the braking maneuver executed by the Buick driver, and while in this position, he was able to see the Buick automobile slide up to the Royal Furniture truck so that from his vantage point the Buick automobile partially blocked the view of the lower portion of the Royal Furniture truck. His testimony was to the effect that the automobile and the truck were in such close proximity that the automobile partially blocked his view of the truck.
Carey Sewell, the driver of the automobile, testified that as he approached the traffic signal at the intersection of Weller Avenue and Scenic Highway, about three-quarters of a block away from the light, he noticed that the signal light was red, facing Scenic Highway but was about to turn to green. As he was approaching the light when it was on red, he had slowed down, and when he saw the light turn to green he resumed his speed and proceeded on, there being no vehicles at all in the left hand lane between him and the traffic light at that time. He stated that as he was about midway of the block the Royal Furniture truck began pulling into the left hand lane. As he was “relatively close” to the truck at the time that it executed this maneuver, he applied his brakes and possibly turned to the left. It was at this time that his car began to slide in a counter clockwise direction, crossing the median and going into the lane or oncoming traffic. He testified that immediately after the accident, the Royal Furniture truck pulled back into the right hand or outside lane and proceeded down Scenic Highway.
The testimony of Fairy Lee Sewell, a passenger in the Buick automobile, was substantially the same as that of her brother. Her testimony is that at the time that the truck pulled into the left hand or inside lane, there was about a car length and a half separating the two vehicles. She also testified that there were no signals whatsoever given by the truck driver to indicate his intention to execute a left turn.
James Guy, the driver of the Royal Furniture truck, testified that he was proceeding down Scenic Highway in the outside or right hand lane and that he turned on his signal lights indicating that he wished to change from the outside lane to the inside lane, however, he noticed the oncoming Buick automobile and did not in fact execute his turn. He attributes this to the fact that the Buick automobile was traveling at *861 such a high rate of speed, which he estimated to he between 50 and 60 miles per hour, that he did not feel that the lane change would he safe. He did testify that he saw the Buick automobile begin to swerve as he looked into his rear view mirror, and he also admitted that the Buick automobile slid up alongside his truck. He denied any knowledge of the occurrence of the accident and admitted that he had proceeded down Scenic Highway to his office. His testimony is that he knew nothing about the accident until he was later contacted by the City Police and requested to appear at the Police Station.
The police officer who investigated the accident found no skid marks. This was due to the condition of the roadway at the time of the accident. In addition, the investigating officer was not able to precisely locate the point of impact.
Our examination of the testimony of the witnesses and the various exhibits depicting the area of the accident leads us to the conclusion that the sole causative factor in this entire chain of events was the action of James Guy in changing from the outside to the inside lane of Scenic Highway at a time when the Sewell automobile was so close to him so as to make that maneuver extremely hazardous. Our review of this record further convinces us that but for the actions of the driver of the Royal Furniture truck, this accident would not have occurred. Carey Sewell testified that at a time prior to the accident when he first observed that the signal light at the intersection of Weller Avenue and Scenic Highway was red, he had slowed his automobile down, and that it was only after having observed that the signal had again changed to green that he resumed his original speed. We note that on the occasion when Sewell braked his automobile immediately prior to the braking that precipitated the accident, he was able to slow his vehicle without losing control thereof. We believe it clear from the record that it was the urgency and the suddenness of the braking maneuver when the Royal Furniture truck pulled into the inside lane of traffic that caused Sewell to lose control of his automobile. Immediately before Sewell applied his brakes, the inside lane of traffic between him and the signal light was completely empty, thus allowing him to resume the speed at which he had been driving.
We find the testimony of James Guy to be in direct conflict with that of Mr. Heat-on, the disinterested witness, Carey Sewell and his sister. It is our belief that the record clearly supports the proposition that James Guy did in fact turn into the inside lane of traffic suddenly and without warning and at a time when the proximity of his vehicle to that of the Sewell vehicle precluded his doing so in safety. Carey Sewell was in fact presented with a sudden emergency in the form of the Royal Furniture truck swerving into his lane of traffic, and we believe that this sudden emergency with which Carey Sewell was presented was not of his own making.
Counsel for appellee argues that the weight of the jurisprudence prohibits us from setting aside the verdict of a jury in a case where the testimony is conflicting, where the testimony of the witness is accepted as credible and is sufficient to sustain the verdict. He also argues that on questions of fact and the credibility of witnesses, the findings of the jury or a Trial Judge should be given great weight and are not' to be reversed on appeal except when manifest error exists. In this particular case there is no serious conflict in the testimony, other than the fact that James Guy testified that he never did pull into the inside lane of traffic, whereas three other witnesses testified that he did. We believe, however, in this instance the testimony of the witnesses taken as a whole, is insufficient to sustain the verdict of the jury insofar as that verdict decrees that Carey Sewell was guilty of negligence which was a proximate cause of the accident. We agree, of course, that on questions of fact the findings of the jury or the *862 Trial Judge should be given great weight and we are loath to reverse except where manifest error exists. It is our opinion that the action of the jury in determining as aforesaid that Carey Sewell was guilty of negligence which was a proximate cause of the accident is manifest error.
Accordingly, the judgment of the Trial Court is hereby amended so as to cast in judgment James Guy, Royal Furniture Company of Baton Rouge, Inc., and the Travelers Insurance Company, and dismissing said suit as against Carey Sewell and Hartford Accident and Indemnity Company, all costs of this appeal to be paid by James Guy, Royal Furniture Company of Baton Rouge, Inc., and the Travelers Insurance Company.
Tudgment amended and affirmed.