253 So.2d 83 (1971)
Mary J. CLONEY
v.
The TRAVELERS INSURANCE COMPANY et al.
Maude McDonough QUERBES
v.
The TRAVELERS INSURANCE COMPANY et al.
Mrs. Mabel McDonough ALLISON et al.
v.
The TRAVELERS INSURANCE COMPANY et al.
Nos. 8112-8114.
Court of Appeal of Louisiana, First Circuit.
March 15, 1971.
On Rehearing August 9, 1971.
Writs Refused October 15, 1971.
*84 W. S. McKenzie, of Taylor, Porter, Brooks & Phillips, Baton Rouge, and H. F. Sockrider, Jr., of Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for appellants.
Horace Lane, Edward W. Gray, of Percy, Macmurdo & Gray, Robert L. Kleinpeter, Baton Rouge, Harry Verlander, Jr., New Orleans, and Patrick W. Looney, Shreveport, Anthony J. Bonfanti, Baton Rouge, for appellees.
Before LOTTINGER, LANDRY, SARTAIN, BLANCHE and PICKETT, JJ.
BLANCHE, Judge.
These three consolidated suits arise from multiple rear end, chain-reaction collisions which occurred at approximately 11:10 A. M., September 7, 1966, on U.S. Highway 190, near Livonia, Pointe Coupee Parish. At the scene the highway is a four-lane, paved roadway running in an easterly-westerly direction. The day was clear and sunny; visibility was unimpaired. The speed limit in effect was seventy miles per hour. The opposing lanes are separated by a median barrier composed of metal rails supported by posts implanted in the ground.
Four vehicles, all traveling westerly in the inside, westbound lane, were involved (1) a Ford Mustang driven by David Sidney Fontenot, minor son of Sidney Fontenot who owned the car; (2) a Plymouth station wagon owned by the Texas State Department of Health, which vehicle was being driven by the Department's employee, Raul G. Rocha, and was insured by Hartford Accident and Indemnity Company; *85 (3) a Ford station wagon owned by the Louisiana Department of Highways, which vehicle was being operated by the Department's employee, Jack Jones, and was insured by The Travelers Insurance Company; and (4) a Cadillac sedan owned by Mrs. Andrew Querbes, which vehicle was being driven by Mrs. Querbes' sister, Mary J. Cloney, and was insured by Insurance Company of North America.
Fontenot, the lead driver, brought his vehicle to a sudden stop without striking a car immediately ahead, which other vehicle likewise stopped in the inside lane. Rocha, following Fontenot, could not stop in time and ran into the rear of the Mustang. Jones, traveling behind Rocha, likewise did not stop in time and ran into the rear of the Plymouth. Mrs. Cloney, following Jones, moved over into the outside lane; and when Jones went out of control after ricocheting off Rocha into the outside lane, the Cadillac collided with the right side of the Ford at or about the center door post.
Plaintiff Cloney filed suit against Sidney Fontenot, Rocha and Travelers (Number 8112) seeking recovery of the damages for personal injuries sustained in the accident and expenses incurred in treatment thereof.
Mrs. Querbes named as defendants Sidney Fontenot, Rocha and Travelers (Number 8113). She asked for damages for personal injuries, expenses incident thereto and property damage to her automobile. Mrs. Querbes died prior to trial. Her heirs, Andrew C. Querbes, Jr., Kathryn Querbes Blanchard and Sandra Querbes Gay, have been duly substituted as parties in decedent's stead. Kathryn Querbes Blanchard died since the matter has been on appeal, and at the present time no administrator has been appointed for her succession, and the Court has signed an order designating the proper parties plaintiff as the estate of Kathryn Querbes Blanchard, Sandra Querbes Gay and Andrew C. Querbes, Jr.
Mabel McDonough Allison, another guest passenger in the Querbes car, instituted action against Travelers, Employers Liability Assurance Corporation (insurer of Mrs. Cloney's personally-owned automobile), and Insurance Company of North America (insurer of the Querbes Cadillac). Mrs. Allison seeks damages for personal injuries sustained in the accident. Her husband, Patrick A. Allison, prays for expenses incurred in treatment of her injuries.
The trial court found Jones alone was at fault. In Suit Number 8112 judgment was rendered below in favor of Mrs. Cloney against Travelers alone in the sum of $11,112.34. In Suit Number 8113 judgment was rendered in favor of the Querbes heirs in the aggregate of $9,803.80 against Travelers only. In Suit Number 8114 Mr. and Mrs. Allison were granted recovery of $29.14 and $4,000.00, respectively, from Travelers solely.
Travelers has suspensively appealed all adverse judgments alleging that (1) Fontenot and Rocha were the only parties negligent under the circumstances; (2) Fontenot's and Rocha's negligence, which consisted in following too closely, traveling at an excessive rate of speed, failing to maintain a proper lookout, failing to keep their vehicles under control and failing to stop in time to avoid running into a vehicle stopped ahead, was the proximate cause of the collision between the Jones and Cloney vehicles; (3) alternatively, Mrs. Cloney's claim is barred by her contributory negligence in the same respects charged against Jones and Cloney; and (4) the award to Mrs. Querbes' survivors is excessive and should be reduced.
Mrs. Cloney has appealed devolutively praying for an increase in her award of damages for personal injuries and reversal of the judgment rejecting her demands against Fontenot and Rocha.
In essence Young Fontenot testified he was proceeding westerly in the inside lane at a speed of approximately sixty-five *86 miles per hour and that the traffic ahead was moderate. He suddenly noted the brake lights of the car ahead flash on, abruptly applied his own brakes and came to a stop in the left lane approximately 10 feet behind the car ahead. After stopping he looked in his rear view mirror and noted the Plymouth approaching from the rear at a speed which indicated the Plymouth would not stop in time to avoid a collision. He attempted to shift his car into gear to pull ahead and allow Rocha more stopping room but was struck from behind before he could change gears. He described the impact as relatively light; it propelled his car forward only about two feet. He also noted in his rear view mirror that Jones pulled partly into the outside lane in an attempt to avoid striking Rocha's Plymouth in the rear but without success. He observed Jones' car strike the Plymouth from behind and then strike the Cadillac which was then proceeding in the outside lane. He also stated that the collision between the Ford and Plymouth caused the Plymouth to strike the Mustang again. The dual impacts caused damage to the Mustang in the sum of $216.00. Fontenot also noted that prior to development of the circumstances causing him to stop, he observed the Plymouth following behind him at a distance of about five or six car lengths. He testified his car was almost new and so far as he was aware his brake lights were in operating order. After being questioned and released by the investigating officer, he drove his car from the scene. About one-quarter of a mile from the site of the accident, he noted a Highway Department dump truck blocking the outside westbound lane. He also observed a flagman near the truck directing all westbound traffic into the inside lane, thus accounting for the buildup of the traffic in the inside lane.
Rocha's testimony is that he was proceeding in the westbound lane following Fontenot at a speed of forty-five to fifty miles per hour and maintaining a distance of six to ten car lengths from the Fontenot vehicle. When Fontenot came to an abrupt stop, Rocha drove his vehicle into the median divider barrier to avoid striking the Mustang. He then came to a stop approximately three car lengths behind Fontenot. He was immediately struck from the rear by the Jones vehicle with such force that his Plymouth was shoved into the Mustang. Rocha was unaware of any obstacle ahead of Fontenot which would have required Fontenot's abrupt stop.
Jones' version of the incident is that he was traveling in the left lane approximately sixty-five to seventy miles per hour at a distance of 75 to 100 feet behind Rocha when the emergency developed. When Jones saw Rocha suddenly brake his vehicle without signal or warning, Jones likewise applied his brakes and also veered to the right. The left front of his car struck the right rear of Rocha's Plymouth. At the moment of impact, he estimated that the right front of his Ford was three feet into the right or outside lane. Immediately following the first impact, a second collision occurred when his Ford was struck at about its right center door post by the left front or side of the Cloney Cadillac. He also stated that some time prior to the accident he observed the Cadillac behind him in the inside lane. At the time he veered toward the right lane, he was unaware the Cadillac was also proceeding into the outside lane. Jones acknowledged that he has experienced eye trouble in the past which required biannual examination and change of glasses. He also acknowledged he had a cataract operation and change of glasses since the accident. Jones conceded he was in a hurry and that he needed to make time because he was transporting fellow employees to Jennings to report for work. He admitted he was traveling at the maximum legal rate which traffic permitted but, at the same time, he was careful not to exceed the lawful limit of seventy miles per hour.
Mrs. Cloney's testimony relates conflicting, inconsistent and irreconcilable versions of how the accident occurred. She first *87 stated she had been traveling behind Jones but at least two to three mintues prior to the collision she had changed into the right or outside lane. While in this position, she saw no cars ahead in the outside lane, neither did she see any congestion in the inside lane which could require a driver to stop. While proceeding in the outside lane, in the act of passing Jones, she noticed Jones and two other vehicles in the inside lane when Jones suddenly veered into the outside lane. She immediately jammed her brakes and held them jammed until the collision occurred. She also stated the Jones vehicle made a complete circle on the roadway and at the moment of impact was headed due east and collided with her car head on. Mrs. Cloney conceded that in a prior deposition she stated she had been traveling behind Jones and only had time to turn to the right when Jones cut to his right. At another point Mrs. Cloney stated she did not see the Jones vehicle until it suddenly veered across her path. She also stated she was traveling one car length, a safe distance according to her, behind Jones before she changed lanes. She denied ever applying her brakes while traveling behind Jones in the inside lane. At still another juncture she admitting seeing the brake lights of Rocha's car flash on at which time she applied her brakes because she knew "something was the matter." At no time did she see Jones' brake lights come on. She maintained her car was partly on the right shoulder and the Jones car entirely in the right lane at the time of impact.
Mrs. Allison's testimony is to the effect that her sister and host driver, Mrs. Cloney, had been proceeding in the right or outside lane at least five to ten minutes prior to the accident. She estimated the Cadillac was about three car lengths behind Jones' car when Jones began to change lanes.
Howard Hardy and Billy Ray McHarty, passengers and fellow employees of Jones, testified in effect that both were dozing prior to the onset of the circumstances giving rise to the accident. Each stated the noise of squealing brakes awoke him in time to see that Jones would inevitably collide with the rear of the vehicle ahead.
The accident was observed by a disinterested witness, Mrs. Helen Young, who stated she was traveling approximately seventy miles per hour in the outside, westbound lane several hundred yards behind Mrs. Cloney. She noted Mrs. Cloney traveling in the inside lane behind Jones and noticed her right tail light indicating she intended to make a right turn and saw her proceed into the outside lane. She observed the Mustang, Plymouth and Ford following each other very closely in the left lane. She also noted that the right lane was clear ahead of Mrs. Cloney when Mrs. Cloney switched lanes. She estimated that Jones was less than two car lengths behind Rocha immediately before the accident. Mrs. Young did not see the Plymouth hit the Mustang or the Ford hit the Plymouth. She only saw the Ford strike the Cadillac. She was of the view the Ford was half in the inside lane and half in the outside lane while the Cadillac was entirely in the outside lane at impact. She observed that the collision was between the right front fender of the Ford and the left front fender of the Cadillac near the door. She likewise stated that just before the accident she reduced her speed to fifty or fifty-five miles per hour because she noticed that traffic ahead was slowing down.
David J. Romero, a guest passenger of Mrs. Young, testified that shortly before the accident the Mustang, Plymouth, Ford and Cadillac all passed on the left of his host driver who was traveling in the outside lane. He looked aside momentarily when suddenly Mrs. Young exclaimed, "Look David." He looked forward and saw the Cadillac proceeding straight ahead in the outside lane. He heard the noise of the Ford striking the Plymouth and saw the Ford hit the Cadillac. *88 He did not see the Plymouth strike the Mustang, neither did he see the Ford hit the Plymouth. He did observe that the Mustang was stopped in the inside lane. He saw nothing in front of either the Ford or Mustang which would require either driver to stop. Romero first estimated that the Young car was about two miles from the accident scene when the collision occurred. He subsequently altered this estimate to one-quarter mile. He further stated the right turn blinker light of the Cadillac was on at the time of impact. In addition, he stated Mrs. Cloney passed Mrs. Young before the accident traveling at about eighty miles per hour as Mrs. Young was going seventy at the time. He confirmed Fontenot's testimony that the right lane of the highway was blocked some distance ahead. He did not recall the presence of a flagman.
C. M. "Pop" Strange was also a disinterested witness. He stated he was traveling in the outside lane about 100 feet behind Mrs. Young at a speed of fifty to fifty-five miles per hour. He averred that the Jones and Cloney vehicles passed him, both going at the same speed, traveling about 100 feet apart. The collision occurred about 200 yards ahead. At the moment of impact the Cadillac was in the right lane, its left rear wheel on about the center line of the westbound lanes. He stated the actual collision occurred about two feet from the center line in the outside lane. Mr. Strange also stated that the Ford and Cadillac both started swerving to the right at about the same time. When Mrs. Cloney swerved, she was approximately 50 feet behind Jones. He also stated he did not see the Mustang or Plymouth prior to the collision. In addition, he related that it appeared the Ford was in trouble because of a car ahead and attempted to get into the outside lane. He also noted that the driver partially lost control of the Ford because the vehicle's rear end skidded a little into the right lane. He was of the opinion that Mrs. Cloney was attempting to pass Jones because he believed she cut to her right shortly before Jones did, at which time he estimated Mrs. Cloney was about 50 feet behind Jones. Following the accident he noted that the Ford left about 15 feet of skid marks commencing in the left lane and continuing about 3 feet into the right lane. He observed heavy traffic in the left lane of travel at the time of the accident. After continuing past the scene, he noted no obstruction whatsoever in the outside lane of the road ahead.
The accident was investigated by Lt. Phillip J. Pizzolato of the State Police. He found the vehicles positioned as follows: the Rocha vehicle was directly behind that of Fontenot, the right front end of the Jones car was in the outside lane of travel, the Cloney car was in the outside lane behind and to the right of Jones' automobile. Damage to the respective vehicles was noted as follows: the right rear and entire front of Rocha's car, the front end and right side of Jones' car, the back end only of the Mustang, the left front of the Cadillac. Pizzolato found 10 feet of skid marks left by Rocha's car leading to the point of collision with the Mustang. Rocha's car was touching or almost touching that of Fontenot. He also found 25 feet of skid marks left by the Cloney automobile. A fair appraisal of his testimony on this point is that he found tire marks of the Cadillac proceeding from the inside lane to the outside lane and was not certain whether the heavier skid marks began in the inside lane or whether they were entirely in the outside lane. The heavier skid marks continued to the point of contact between the Ford and cadillac, which was entirely in the outside lane. He estimated the Ford was approximately halfway in the outside lane at the instant of contact. He related that Fontenot stated he was compelled to slow down for congested traffic and that *89 Fontenot's car was not quite stopped when it was struck from behind. From the physical evidence and position of the vehicles, Pizzolato concluded the collision between the Ford and Cadillac occurred in the outside lane, that the Cadillac was in the outside lane at the moment of impact and that the front of the Cadillac struck the right door of the Ford. He also concluded that both Jones and Mrs. Cloney were following too closely.
In the Cloney and Querbes actions, defendant Fontenot is charged with negligence in suddenly stopping on a congested multiple lane highway without cause, thus creating an emergency. Rocha and Jones are alleged to be negligent in traveling too closely, traveling at excessive speed, failing to maintain a proper lookout, failing to have their vehicles under control, negligently running into the rear of the car ahead and negligently failing to take measures to avoid an accident.
The Allisons charge Jones with negligence in the same respects as in the Cloney and Querbes suits. Mrs. Cloney is averred to be at fault in failing to avoid crashing into the Jones vehicle. No further particularization of her asserted negligence is alleged.
Under the circumstances peculiar to this case, we view the conduct of Rocha and Jones as concurring to produce the injuries to Cloney and her guests. Their conduct in following too closely at an excessive rate of speed without keeping a proper lookout was in violation of LSA-R.S. 32:81 subd. A and was the proximate cause of the accident. In Fouquier v. Travelers Insurance Company, 204 So.2d 400 (La.App.1st Cir. 1967), and recently in Jones v. Lungaro, 231 So.2d 60 (La.App. 1st Cir. 1970), we held in those cases that in a series of chain-reaction, rear end collisions the drivers of the following vehicles were solidarily liable for injuries to the driver and occupants of the lead vehicle. By the same force of reason and logic, they may likewise be liable to a following motorist that collides with a car ahead due to the preceding driver's negligence in failing to keep a proper lookout and thereby creating an emergency. Nomey v. Great American Indemnity Company, 121 So.2d 763 (La. App. 2nd Cir. 1960); Morgan v. Whittington, 191 So.2d 911 (La.App. 1st Cir. 1966); Henderson v. Ancona, 197 So.2d 150 (La.App.1st Cir. 1967).
With reference to the charges of contributory negligence on the part of Mrs. Cloney that she was guilty of the same conduct as Rocha and Jones, we make reference to the trial judge's opinion:
"C. M. `Pop' Strange, an assistant recruiting coach for Louisiana State University, testified he was alone, following the Jones car; that there was one car between him and the Jones car, which was driven by a Mrs. Murphy Young accompanied by a boy named `David'. HeStrange, was following the Young car. Mr. Strange testified that a Ford and a Cadillac had passed him some little ways back on the highway, and that he noticed them some 200 yards from where the accident happened. Mr. Strange further testified that when the Jones car was some 50 feet or more from the Rocha car the driver of the State Highway Department carMr. Jones apparently put on the brakes and his car went out of control. He testified that the Jones car made skidmarks on the highway, which he pointed out to the investigating officer. He also testified that at this time the Cadillac, driven by Mrs. Cloney, was in the right-hand or outside lane. Mr. Strange stated that when the accident happened the Cadillac car was well over in the right lane.[1]
*90 "Mr. Billy Ray McCarty, who had been a Deputy Sheriff for Catahoula Parish, Louisiana, but had started working for the Louisiana Highway Department, was riding in the Jones car. He said he had been dozing and the tires squealing waked him up. He testified that when he awakened he saw immediately saw [sic] that their car was going to hit the car in front of them as `we were about 20 feet away at the time, and right on them.' He stated that the left front of the Jones car hit the right rear of the Rocha car and glanced off over into the right lane and collided with the Cadillac car. He testified that as he glanced to his right and saw the Cadillac car it was in the outside lane and slightly to the rear of the Jones car. Young McCarty testified, on cross-examination, that they had been going about 70 miles per hour before he dozed off to sleep and when he waked up, by hearing the tires squealing, they were right on the other car, and he saw that they were going to hit. He testified that the Cadillac had to be in the right lane at the time of the accident in order for the Jones car to hit it. Incidentally, this later statement is exactly in line with young Fontenot's statement that the Cadillac car was in the right lane when struck, and also in accord with Mrs. Cloney's testimony.
* * * * * *
"Mrs. Cloney testified that back some little distance she and the Highway Department car were both stopped at the traffic lights waiting for the lights to change. She testified that she was driving about 60 or 65 miles an hour, and after leaving the traffic lights she had gotten over into the outside lane and had straightened out. `I looked ahead and did not see any traffic ahead of me in the outside lane." Mrs. Cloney testified that she saw the white Ford (Jones car) leave the left lane and turn into the right lane. "I put on my brakes and then we hit.'
"* * * The court does not find any negligence on the part of Mrs. Cloney, nor the owner of the Cadillac, Mrs. Querbes." (Reasons for Judgment, Record, pp. 75-78-Emphasis supplied)
Even considering that the testimony of Mrs. Cloney should have been discounted by the trial judge, the testimony of the other witnesses as well as the physical evidence could have been justifiably relied upon by him to conclude that Mrs. Cloney acted with prudence after being confronted with an emergency not of her own making. The testimony of Fontenot, Mrs. Young, Romero and Strange placing Mrs. Cloney in the righthand lane before Jones went out of control and ricocheted into her lane of travel is substantial evidence to support the logical and sound conclusion of the trial judge that Mrs. Cloney was free from negligence. Inasmuch as there is sufficient evidence to support the finding of the trial judge, an appeallate court should not substitute its own conclusions for those of the trial judge in the absence of manifest error. Sarvaunt v. New Hampshire Insurance Company, 220 So.2d 120 (La.App.3rd Cir. 1969); Fairbanks v. Travelers Insurance Company, 232 So.2d 323 (La. App. 2nd Cir. 1970).
This Court had before it in the case of Henderson v. Ancona, supra, a decision of the same trial judge which we affirmed in a fact situation practically identical to that in the case at hand. In the Henderson case the accident occurred *91 on U. S. Highway 190 (the same as in the instant case) and involved a three-car collision instead of four as here, and the driver of the vehicle in the Jones position was found negligent, and the driver of the vehicle in the same position as Mrs. Cloney was found free of negligence. In the Henderson case Mrs. Barbara Olinde, who was driving the second vehicle, collided with the first vehicle as a result of her failure to keep a proper lookout. After the initial collision she ricocheted into the outside lane of U. S. 190 where she was struck from the rear by the third vehicle driven by Mr. Ancona, which occupied the same position as Cloney in the instant case. The skid marks left by Ancona's car went from the inside lane to the outside lane, and Ancona's speed of sixty-five miles per hour is comparable to Mrs. Cloney's speed of sixty-five to seventy miles per hour. The only difference is in Ancona's testimony that he was 200 feet away when he noticed the danger, and Mrs. Cloney testified at one point that she did not see Jones until the collision. Despite this fact, the physical evidence shows that Ancona's tire and skid marks, like Cloney's, were the result of evasive action created by an emergency. In fact, the preponderance of the testimony was that Mrs. Cloney's skid marks were entirely in the outside lane while Ancona's skid marks were described as going from the inside to the outside lane, thus revealing that Mrs. Cloney was able to react by moving into the outside lane more quickly than did Ancona.
A further pertinent comment is found in the Henderson opinion as follows:
"That Ancona was keeping a proper lookout is attested by his alertness in detecting the impending accident ahead and taking what then appeared reasonable steps to avoid involvement therein. The imminent collision was about to transpire in the inside lane. He applied his brakes and veered to the outside lane." (Henderson v. Ancona, 197 So.2d 150, 153)
The same can be said for Mrs. Cloney with equal force.
The trial judge relieved Fontenot, the lead vehicle, from liability, and with this finding we are in accord. Because of the traffic ahead, Fontenot brought his vehicle to a stop, leaving an interval of 10 to 15 feet between his car and the car ahead. While he candidly admitted that his stop was somewhat abrupt, he left no skid marks and had time to contemplate driving his vehicle farther ahead when he noticed that Rocha was going to hit him from the rear. Stated otherwise, the trial judge found that the manner in which Fontenot brought his vehicle to a stop was reasonable and justified under the circumstances and did not constitute negligence which in any way contributed to the accident.
However, we cannot agree that Rocha was free from fault and reverse the trial court's decision in this regard as being manifestly erroneous. In relieving Rocha of liability, the trial judge stated:
"In the court's opinion whether the Rocha car hit the Fontenot car once or twice, or if he did not hit it at all, is immaterial in fixing the liability in these lawsuits. Rocha is not charged with hitting plaintiff's car. Whether the Rocha car hit the Fontenot car once or twice is immaterialit is the Jones car which is alleged to have collided with the plaintiff's car. There is no allegation, nor is there any testimony to the effect that either the Rocha car nor the Fontenot car hit plaintiff's car or came anywhere near hitting it. The court believes this is important. Had it not been for the Jones car, the third car in line, there would have been no collision with plaintiff's car, in the court's opinion. Jones just couldn't stop and hit anybody in his way.
* * * * * *
"The court is familiar with the long line of decisions in our jurisprudence to *92 the effect that the following car is charged with a heavy responsibility to discharge the presumption of liability when a collision occurs with the lead car. The court is also familiar with the exceptions to this doctrine where the lead car created the emergency. But neither Rocha nor Fontenot hit plaintiff's carJones hit Rocha's car and glanced off and hit plaintiff's car. Seing [sic] the witnesses on the stand, and hearing them testify, the court is convinced that Jones car was responsible, due to his speed and negligence, for his collision with plaintiff's car and the resulting damage." (Reasons for Judgment, Record, pp. 75, 79Emphasis supplied) Undoubtedly, the conduct of Rocha shows that he was following Fontenot too closely and not keeping a proper lookout, and his conduct was a contributing cause of the accident. Further, the evidence preponderates that Rocha did not hit the center median rail as he testified but crashed into the rear of Fontenot. It was certainly not a necessary condition to Rocha's liability that his car come in contact with Mrs. Cloney's car. The inquiry is whether the negligence was a proximate cause of the accident. For example, Herrin v. Perry, 254 La. 933, 228 So.2d 649 (1969), and Fresina v. Guy, 193 So.2d 857 (La.App. 1st Cir. 1966), are illustrations of cases in which motorists are held liable for creating an emergency condition causing an accident even though there is no physical contact between their vehicles and the plaintiff's vehicle. Thus, the conduct of both Rocha and Jones concurred to proximately cause the accident.
As a result of the accident, Mrs. Cloney was painfully and severely injured. Dr. Alfred S. Sanders treated her on her admission to Our Lady of the Lake Hospital and found the following injuries: a severely displaced, comminuted fracture of the right wrist with impaction, deformity and angulation; severe lacerations of the upper gum and interior of the mouth requiring multiple sutures; a simple fracture of the distal extremity of the right tenth rib and an irregularity of the right eighth rib; multiple bruises and abrasions of the left shoulder, both knees, chest and neck; a narrowing of the joint space of the right knee with degenerative changes secondary to arthritis and some arthritic fullness in the right knee. Her mouth and gums were sutured and a closed reduction on her right wrist was performed. Dr. D. F. Overdyke, Jr., an orthopedic surgeon in Shreveport, Louisiana, also examined Mrs. Cloney on September 8, 1966, and continued to treat her through April 20, 1967. He also found severely comminuted, displaced and impacted fractures of the radius and carpal navicular bone of the right wrist, with a "silver fork" or upward bump deformity and a forty-degree dorsal angulation that could not be normally realigned and left her with two separate deformities resulting in a 25 percent partial, permanent disability of the right arm from the elbow down. Additionally, he found synovial thickening, swelling and accumulation of fluid of the joint lining and membranes of the right knee, chondromalacia or a softening of the bony body of the right patella or kneecap and of the hyalin cartilage surface thereof under the joint surface, worsening with the passage of time and use thereof; crepitus or crackling of the right knee which was a raw bone rubbing on a raw bone because of deterioration of the knee cartilage; severe right occipatal headaches; severe sprain of the right paravertebral cervical musculature from the occipital area down into the trapezius muscles, that is, from the right side of the base of the skull into the shoulder muscle related one-fourth to one-third to this accident and superimposed on and aggravating pre-existing moderate osteoarthritis; a patellectomy or removal of the right kneecap on February 5, 1967, resulting in a 35 percent partial, permanent disability to her right leg; physical therapy for both her neck and right knee; and permanent difficulty, disability and limitation of excessive walking, climbing, squatting, kneeling and fatigability. It was necessary *93 for Dr. Overdyke to remanipulate her wrist fracture from Dr. Sanders' closed reduction because it had slipped; and Mrs. Cloney was hospitalized twice, first from September 8, 1966, through September 17, 1966, and second from February 5, 1967, through February 18, 1967. Her right arm was in a long arm cast from her shoulder to her fingertips for eight weeks and in a short arm cast for an additional three and a half to four weeks. Due to the limitation of motion in her right hand and fingers and right knee, she was prohibited from pursuing many of the pleasures of life that she formerly enjoyed. The award of the trial judge of $8,000.00 for the severe injuries sustained by Mrs. Cloney was an abuse of his discretion. Comparisons of other cases have been accepted by the Court as a mode of determining whether an inadequate award constitutes an abuse of discretion. Ballard v. National Indemnity Company of Omaha, Nebraska, 246 La. 963, 169 So.2d 64 (1964); Jones v. Aetna Casualty and Surety Company, 198 So.2d 523 (La.App. 2nd Cir. 1967). We believe this award to be grossly inadequate when compared to other awards in similar cases involving serious injuries similar in nature to those sustained by Mrs. Cloney. In view of the extensive testimony offered concerning these injuries and our impression with regard to their severity, we find that an award of $27,500.00 adequately compensates Mrs. Cloney for her personal injuries.
An award of $5,000.00 was made for Mrs. Querbes' personal injuries, pain and suffering. Following the accident, Mrs. Querbes was admitted to a hospital in Baton Rouge where she was seen by Dr. Alfred F. Sanders, General Practitioner. Examination disclosed the patient suffered bruises on both knees and her left elbow. Mrs. Querbes was hospitalized overnight and removed to Shreveport by her family, via automobile, the ensuing day. Dr. Sanders conceded her injuries were relatively minor. Dr. Sanders also noted that he was informed Mrs. Querbes had a prior history of a heart condition and had recently suffered a stroke, both of which conditions he found unrelated to the accident.
It is conceded that at the time of the accident Mrs. Querbes was being transported from New Orleans to Shreveport by her sisters, Mrs. Cloney and Mrs. Allison, for hospitalization due to a recent stroke. Mrs. Allison testified that she observed visible contusions to Mrs. Querbes' arms and legs as a result of the collision. Mrs. Cloney testified that after arriving in Shreveport, Mrs. Querbes required the services of a nurse. It does not appear from the witness' testimony that such assistance was required by Mrs. Querbes as a result of the injuries sustained in the accident.
Mrs. Querbes' son, Andrew, testified that his mother was unable to walk unassisted and was virtually bedridden following the accident. He acknowledged that his mother experienced a stroke the day before the accident and that prior to and after the accident she was under the care of a physician. He also stated that prior to the accident his mother was treated by Dr. Holoubeck, whereas subsequent thereto she was also attended by Drs. Overdyke and Pasquier. No medical testimony was adduced as to the extent the accident may have aggravated Mrs. Querbes' previous condition of ill health. Lacking the benefit of expert testimony on this score, the trial court acknowledged the difficulty in assessing damages for Mrs. Querbes' injuries.
Under the proof of record, we consider the award of $5,000.00 excessive. So far as this record shows, Mrs. Querbes suffered minor injuries in the accident. There is no proof whatsoever concerning the degree to which these injuries aggravated her prior condition or the extent of the pain and discomfort she experienced as a result thereof. Failure to call the medical experts who attended her in Shreveport gives rise to the presumption that their testimony would have been unfavorable to her cause. McCauley v. LaFleur, 213 So.2d *94 176 (La.App. 3rd Cir. 1968). In view of the testimony offered, we find that an award of $750.00 will do justice among the parties.
A plaintiff bears the burden of establishing each and every element of damages claimed. Foggin v. General Guaranty Insurance Company, 207 So.2d 176 (La.App. 2nd Cir. 1967). The trial court awarded the Querbes heirs $925.80 in special damages. Dr. Sanders testified his charge for attending Mrs. Querbes in Baton Rouge was $35.00. The record contains numerous cancelled checks and a bill from a Shreveport hospital, presumably in payment of services rendered Mrs. Querbes after her arrival in Shreveport. The record is barren of proof that these expenses were incurred in treatment of injuries received by the patient in the accident in question. It is noteworthy in this respect that Mrs. Querbes when injured was en route to Shreveport for hospitalization for previous maladies. Under the circumstances, recovery of medical expenses incurred by Mrs. Querbes cannot exceed the established sum of $35.00.
The trial court awarded recovery of $3,878.00 for damages to and depreciation of Mrs. Querbes' Cadillac which she bought new for $6,468.00 two months prior to the accident. The record contains evidence the vehicle could have been repaired for $2,026.27. Mrs. Querbes' son did not choose to repair the vehicle; he sold it instead for $2,020.00 in its damaged condition. The trial court allowed an arbitrary depreciation of $750.00 and added this sum to the estimated cost of repair. The total of these items, $2,770.00, was deducted from the erroneous purchase price of $6,648.00, leaving a balance of $3,878.00, which was awarded as damages to the vehicle. In so doing, the trial court erred in two respects: (1) arbitrarily allowing depreciation without any evidentiary basis therefor and (2) allowing damages for total destruction of a vehicle when total destruction has not been established.
Where a vehicle is totally destroyed or so badly destroyed that the cost of repair exceeds its value, the proper measure of damages is the value of the vehicle as of the date of the accident less the salvage value thereof. Greenberg v. New Orleans Public Service, 74 So.2d 771 (La. App. Orl. Cir. 1954). If an automobile is not totally destroyed and the cost of repair is less than its value, the measure of damages is the cost of restoration. Granger v. Bouillion, 220 So.2d 764 (La.App. 1st Cir. 1969). Since the car was not totally destroyed and the cost of its repair has not been shown to exceed its value, the award for this item of damages must be assessed at the cost of repair, namely, $2,026.27. The total award in favor of the Querbes heirs, therefore, will be $2,811.27.
Mrs. Allison's answer to Travelers' appeal raises the issue of the adequacy of her award for personal injuries. Dr. Sanders treated Mrs. Allison on the day of the accident in Baton Rouge. He diagnosed her injuries as a laceration above the left eye extending to the forehead, laceration of the nose, multiple bruises and abrasions and a fracture of the right wrist. The patient's lacerations were cleaned, debrided, sutured and dressed and her right wrist and arm placed in a cast. He estimated that her wrist injury would take from three to six months to heal and that she would have some scarring over her eye. Dr. Sanders only saw the patient on this one occasion.
Dr. Henry C. Magee, General Practitioner, first saw Mrs. Allison on September 12, 1966, in Shreveport, Louisiana. At this time he shortened the cast on the patient's fractured right wrist. He observed a laceration over the left forehead extending to the left eyebrow and eyelid, about six centimeters in length. Dr. Magee also found a laceration of the nose and discoloration of the left eyelid due to bruises and suturing. On September 14, 1966, Dr. Magee removed the sutures from the lacerations and on October 3, 1966, removed the cast *95 from the patient's arm. On October 25, 1966, Dr. Magee concluded the wrist was completely healed. During the interval of September 12 to October 25, 1966, Dr. Magee saw Mrs. Allison a total of seven times.
Mrs. Allison testified her injuries were painful. She also stated she sustained a contusion to her knee which continued to bother her. The trial court concluded Mrs. Allison was not seriously injured and that she had made a complete recovery. Under the circumstances we consider the award of $4,000.00 does not constitute an abuse of the discretion vested in the trial court in matters of this nature.

JUDGMENT IN NO. 8112
It is ordered, adjudged and decreed that the judgment of the trial court in Suit No. 8112 in favor of plaintiff, Mary J. Cloney, and against defendant, The Travelers Insurance Company, be amended to cast said defendant in judgment for the sum of $30,612.34, and as thus amended, affirmed.
It is further ordered, adjudged and decreed that the judgment of the trial court in said suit rejecting Mary J. Cloney's demand against Raul G. Rocha be and the same is reversed and that there be judgment in favor of plaintiff, Mary J. Cloney, and against said defendant casting him liable in solido with the defendant, The Travelers Insurance Company, unto the said Mary J. Cloney for the sum of $30,612.34.
The costs of court in No. 8112 are to be paid by defendants.

JUDGMENT IN NO. 8113
For the reasons set forth above, it is ordered, adjudged and decreed that the judgment of the trial court in Suit No. 8113 in favor of plaintiff, Maude McDonough Querbes, and against defendant, The Travelers Insurance Company, be amended to cast said defendant in judgment for the sum of $2,811.27 and as thus amended, affirmed.
It is further ordered, adjudged and decreed that the judgment of the trial court respecting said plaintiff's demands against defendant, Raul G. Rocha, is reversed and that there be judgment in favor of the heirs of Maude McDonough Querbes and the estate of Kathryn Querbes Blanchard and against said defendant casting him liable in solido with the defendant, The Travelers Insurance Company, in the sum of $2,811.27.
The costs of court in Number 8113 are to be paid by defendants.

JUDGMENT IN NO. 8114
For the reasons set forth above, the judgment of the trial court is affirmed. The costs of this proceeding are to be paid by defendant.
Judgments in Nos. 8112 and 8113 affirmed in part, reversed in part and amended; judgment in No. 8114 affirmed.
SARTAIN, Judge (concurring in part and dissenting in part).
These cases arise out of multiple rearend, chain-reaction collisions involving four vehicles. The majority opinion casts the drivers of the second and third vehicles with actionable negligence as joint tort feasors and holds them responsible jointly and in solido for damages and injuries sustained by the driver and occupants of the fourth vehicle. The decision affirms the trial judge in finding the drivers of the first (Fontenot) and fourth (Cloney) vehicles free of negligence. It amends the decision of the district court by increasing the award to Mrs. Cloney and decreasing the award to the heirs and estate of Mrs. Querbes. The majority decision also approves the trial judge's determination that Jones (third vehicle) was not confronted by a sudden emergency and was negligent in following the second vehicle (Rocha) too closely, losing control of his own vehicle, and colliding with the Cloney automobile. With these conclusions I concur.
However, the majority reverses the decision of the trier of fact and holds that Rocha is also guilty of negligence constituting a proximate cause of the collision between *96 the Jones and Cloney vehicles. It is with this latter conclusion that I cannot agree and must dissent.
The facts and resume of the testimony of the various witnesses are correctly set forth in the majority opinion. I disagree with the manner in which the majority has related these facts to the law. More particularly, I cannot agree that the negligence of Rocha was a proximate cause of the collision between Mr. Jones and Mrs. Cloney.
The negligence of both Rocha and Jones consisted of each following too closely behind a preceding motorist in violation of L.R.S. 32:81(A). Rocha followed Fontenot too closely and Jones was too close to Rocha. This negligence resulted in each one colliding with their respective preceding motorist. However, Jones' negligence went one step further and he lost control of his vehicle, departed from his lane of travel and collided with the Cloney vehicle in the outside lane. The trial judge stated that the Jones' vehicle struck Rocha and then "glanced" over into the path of Mrs. Cloney. The majority states that Jones "lost control" of his car after striking Rocha and "ricocheted" into Mrs. Cloney's lane of travel. Neither the trial judge nor the majority has found that the negligent act of Rocha created an emergency situation over which Jones had no control.
The trial judge found as a matter of fact that Rocha's negligence in following too closely behind Fontenot and striking the rear of Fontenot's vehicle was not a proximate cause leading to the collision between the Jones and Cloney vehicles. The trial judge stated that Jones would have hit anything in his path. I agree and cannot escape the conclusion that but for the negligence of Jones which culminated with the latter losing control of his car no accident involving plaintiffs would have occurred. Rocha's vehicle after colliding with Fontenot remained in the inside lane and thus the consequences of his negligence terminated when his vehicle came to a halt. I readily concede that it was only a matter of seconds when he was struck from the rear by Jones but he was nevertheless stopped and Mrs. Cloney would have passed in the outside lane without interference.
Under the facts of this case I cannot see the logic in holding Rocha responsible for the negligent conduct of Mr. Jones. We are dealing with a series of events commencing with two cars following another vehicle too closely. The duty breached by each driver is following a preceding vehicle too closely. In my opinion Rocha should be held accountable for rear-ending Fontenot because he breached his duty to Fontenot. He should not be held accountable for a result emanating from the negligence of a following motorist because he has no control over the action and conduct of a following motorist and in such a situation is virtually defenseless.
Just as the majority concluded that the record failed to disclose manifest error on the part of the trial judge in absolving Mrs. Cloney of contributory negligence, I find that the record amply supports the conclusion of the trial judge in relieving Rocha of any responsibility for the plaintiffs' injuries.
For reasons assigned above, I concur in the reduction of the award to the plaintiffs and dissent from that portion of the majority opinion which is against Raul G. Rocha.

ON REHEARING IN NUMBER 8112
We granted a rehearing solely for the purpose of examining the correctness of our judgment in favor of Mary J. Cloney and against The Travelers Insurance Company.
The limit of liability under the policy of liability insurance issued by The Travelers Insurance Company to the Louisiana Department of Highways is the sum of $20,000 for injuries to any one person. This limit was stipulated to at trial, and the award in favor of Mrs. Cloney in excess of that limit should be reduced accordingly.
Therefore, it is ordered, adjudged and decreed that there be judgment herein in favor of Mary J. Cloney and against The *97 Travelers Insurance Company in the sum of $20,000 together with legal interest thereon from date of judicial demand until paid.
Original opinion amended, and as amended, reinstated.
ELLIS, J., recused.

ON REHEARING IN NUMBER 8113
For the reasons heretofore given in Number 8112, Mary J. Cloney v. The Travelers Insurance Company, et al., the original judgment in the above entitled cause is hereby reinstated.
Original opinion reinstated.

ON REHEARING IN NUMBER 8114
For the reasons heretofore given in Number 8112, Mary J. Cloney v. The Travelers Insurance Company, et al., the original judgment in the above entitled cause is hereby reinstated.
Original opinion reinstated.
NOTES
[1] Our appreciation of Coach Strange's testimony indicates that he vacillated between Mrs. Cloney's moving over into the outside lane as Mr. Jones attempted the same maneuver to her moving into the outside lane independently of Jones' action for the purpose of passing him on the right before Jones became involved with Rocha.